Harvey and Rebecca RUMBAUGH, Individually and as Next Friends Acting on Behalf of Charles RUMBAUGH, Petitioners,

v.

W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent.

Civ. A. No. CA–2–82–99.

United States District Court, N.D. Texas, Amarillo Division.

March 7, 1983.

Will Gray, Simonton, Tex., Tim L. Hoffman, Amarillo, Tex., Stanley G. Schneider, Houston, Tex., for petitioners.

Douglas Becker, Leslie Benitez, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

MARY LOU ROBINSON, District Judge.

Before the Court is an Application for Writ of Habeas Corpus brought by Harvey and Rebecca Rumbaugh, Individually And As Next Friends Acting On Behalf Of Charles Rumbaugh, v. W.J. Estelle, Jr., Director, Texas Department of Corrections. Charles Rumbaugh is a prisoner of the Texas Department of Corrections who was scheduled to be executed on July 23, 1982, by virtue of a judgment of conviction of capital murder and sentence of death from the 181st District Court of Potter County, Texas. Petitioners contend that Charles Rumbaugh is not mentally competent to decide whether to pursue a Writ of Habeas Corpus. The action was filed in the Houston Division of the Southern District of Texas and a stay of execution was ordered by the Honorable George E. Cire, who then transferred the action to the Amarillo Division of the Northern District of Texas where venue is proper.

The petitioners lack standing and the federal courts lack jurisdiction to entertain the application for Writ of Habeas Corpus unless Charles Rumbaugh is incompetent to act on his own behalf in pursuing federal remedies. The burden of showing that Charles Rumbaugh is incompetent is on the petitioners seeking to act on his behalf. *See Evans v. Bennett,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979); *Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976); *Lenhard v. Wolff,* 603 F.2d 91 (9th Cir.1979); *Weber v. Garza,* 570 F.2d 511 (5th Cir.1978).

In *Rees v. Payton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), the Supreme Court set out the standard to be applied in determining mental competence to make decisions concerning appeal. In *Rees,* the Court directed the District Court to

determine Rees' mental competence in the present posture of things, that is, whether he has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

Accordingly, this Court set the application for preliminary hearing to determine whether examinations or evaluations of the prisoner should be made, whether any commitment for examination should be made to state or federal hospital facilities, and the conditions for any examinations, evaluations, or commitments.

After the preliminary hearing, and with the agreement of all counsel, the Court ordered Charles Rumbaugh committed to the maximum security unit of the federal prison in Springfield for thirty (30) days or such other time as might be reasonably necessary to determine his present mental competency. The order provided for an examination to determine "whether Charles Rumbaugh has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand, whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

Psychiatric reports were received by the Court December 9, 1982. Copies were forwarded to all parties. By subsequent orders the examining authorities were directed to make available to the parties copies of all tests and rough data sheets discussed in the psychiatric evaluation. No further psychological or psychiatric examination of the prisoner was requested by either party.

In the course of his evaluation at the Federal Medical Center the prisoner was given a list of twenty-two (22) questions which he answered by himself with the use of a typewriter over a period of several days. His answers which are included in the report show a rational understanding of his position and the options available to him with regard to continuing or abandoning further litigation. The opinion of the psychiatrist is as follows:

It is the opinion of the examining Psychiatrist that the defendant has the capacity to appreciate his position and make a

rational choice with respect to continuing or abandoning further litigation. However, the extent of the defendant's depression does substantially affect his capacity in the premises.

At a hearing to determine Rumbaugh's competency on February 4, 1983, a psychiatrist and a clinical psychologist testifying for petitioners and a clinical psychologist testifying for the respondent differed sharply in their interpretation of the report from the medical center. The Court on its own motion recessed the hearing until such time as Dr. William S. Logan, the medical center psychiatrist, could be present and testify. The hearing was resumed February 24, 1983, with Dr. Logan present.

At the hearing Dr. Logan testified that the prisoner is depressed; that his depression is based on a realistic assessment of his own mental problem and the circumstances facing him; that he is able to think coherently; that he is able to understand what is going on; and that his decision not to appeal is rational or at least logical in the light of the options which are presently available to him.

After Dr. Logan testified, Mr. Rumbaugh's appointed counsel stated that his client wanted to answer any questions that counsel for the parties would like to ask and afterward make a statement to the Court. He was permitted to do so. At the conclusion of his testimony Mr. Rumbaugh took an ice pick like weapon from his inside coat pocket and left the stand, advancing on the Deputy Marshal and demanding that the Marshal shoot. The Marshal was compelled to shoot Mr. Rumbaugh in the chest at close range. The transcript of Mr. Rumbaugh's testimony follows:

## EXAMINATION

BY MS. BENITEZ:

Q  Mr. Rumbaugh, you have attended all the hearings in the case and you've heard, I guess, the testimony now of some four to five witnesses, including Dr. Logan from Springfield, who observed you over a long period of time.

And you've heard us all talking about your ... about the depression that I think all of the doctors agree that you're experiencing at this particular time.

And you have just heard the testimony of Dr. Logan that ... and of other witnesses, too, that that depression stems to a great extent from your current incarceration on death row and your realistic understanding that it's not very likely that conditions are going to change much in the future.

I guess at this point, the only thing I want to ask you is: Is there anything else that you would like to tell us about the ... about the testimony of the doctors relating specifically to the depression that they believe you're experiencing now.

A  Well, I don't feel I'm depressed right now. I haven't been taking any medication for approximately thirty days. I was taking medication, an antipsychotic drug, and I haven't experienced any problems since I quit taking it.

And I think I understand my situation very well and I believe my decision is a logical and rational one.

And it doesn't really matter to me what this Court decides today because I've already made the decision to take matters into my own hands.

So it doesn't make any difference.

Q  Are you anxious for some kind of a resolution of this case one way or the other?

A  Yes. There has to be an end to it. You know, it's gone on and on for eight years and that's long enough.

Q  And is it your desire at this time to waive your further appeals available to you?

A  Yes, it is.

Q  And are you fully aware that if you decline to pursue your appeal and the Court finds that you are competent to do so, that you will be executed by the State of Texas?

A  I'm aware of that.

Q  Is this a decision that you've come to over a lengthy period of time?

A  Yes, it is.

MRS. BENITEZ: I'll pass the witness.

MR. HOFFMAN: Mr. Rumbaugh, you had expressed that you wished to make some statement to the Court. Is that what you've done; and if not, please go ahead and make any other further statements that you wish to make to the Court.

MR. RUMBAUGH: All I really wanted to say is that it doesn't matter to me; that I've already picked my own executioner and I'll just make them kill me. If they don't want to do it . . . if they don't want to take me down there and execute me, I'll make them shoot me.

MR. HOFFMAN: Is there anything further that you wish to say to the Court?

MR. RUMBAUGH: No. I think I'll make them shoot me right now.

> (That concludes the portion of the transcript that is reflected by this reporter's shorthand notes. The following is a transcription of a taperecording that was being made by the reporter and is after Mr. Rumbaugh left the witness stand.)

MR. RUMBAUGH: Shoot!

The hearing was recessed and resumed approximately an hour later at which time Dr. Logan was again called to the stand to testify. Dr. Logan testified that Mr. Rumbaugh was determined to meet death on his own terms and that the occurrence in the courtroom illustrated his analysis of Mr. Rumbaugh rather than changed it.

After considering all of the evidence the Court finds that Charles Rumbaugh has a realistic understanding of his present position and of the choices available to him, and that he is mentally competent to make a rational choice with respect to continuing or abandoning further litigation.

The Petitioners lack standing to pursue a Writ of Habeas Corpus for Charles Rumbaugh. The Application for Writ of Habeas Corpus should be dismissed. It is further the opinion of this Court that the stay of execution entered by the District Court on July 20, 1982, should be lifted and set aside effective March 14, 1983.

It is so ORDERED.