No. 84–6689. RUMBAUGH ET AL., INDIVIDUALLY AND AS NEXT FRIENDS OF RUMBAUGH *v.* McCOTTER, DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS. C. A. 5th Cir. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Petitioners, Harvey and Rebecca Rumbaugh, are the parents of Charles Rumbaugh, who has been sentenced to death. They seek to present a next friend petition for writ of habeas corpus on behalf of their son, while their son refuses to seek collateral review of his conviction or death sentence and resists his parents' efforts to secure such review. The son's reason for wanting no review is that he desires to die as quickly as possible so as to end feelings of intolerable depression that plague him. A Federal District Court found that Charles Rumbaugh was mentally competent to waive his rights and thus to assure his own death, and it accordingly dismissed the petition for writ of habeas corpus. *Rumbaugh* v. *Estelle*, 558 F. Supp. 651 (ND Tex. 1983). The Court of Appeals affirmed. *Rumbaugh* v. *Procunier*, 753 F. 2d 395 (CA5 1985). The issue presented is whether those determinations comported with the standard for waiver set forth in *Rees* v. *Payton*, 384 U. S. 312 (1966). Because the decisions below substantially strayed from the *Rees* standard, so that they, in essence, allow a state capital punishment scheme to become an instrument for the effectuation of a suicide by a mentally ill man, I dissent from the denial of certiorari.

*Rees* specified the findings necessary to a determination that one who seeks to waive further review of a criminal conviction is competent to make such a grave choice. Under *Rees* the courts

below were required to determine "whether [Charles Rumbaugh] has [the] capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Id.*, at 314. Rumbaugh was examined by numerous psychiatrists, and based on their testimony and reports, a Federal District Court found Rumbaugh competent.

This conclusion, however, was not based on a finding that Rumbaugh's choice was uninfluenced by mental illness. To the contrary, the court found that Rumbaugh suffered from severe mental illness and that this illness was a major influence on his choice. The courts below relied on a determination that Rumbaugh "logically" chose death *because* he had become a victim of mental illness, suffering from "frequent bouts of paranoia," "auditory hallucinations," and severe "depression." Rumbaugh seeks death because he knows himself to be mentally ill and has lost hope of obtaining treatment. If not for his illness and his pessimism regarding access to treatment, he would probably continue to challenge his death sentence; but faced with his vision of life without treatment for severe mental illness, Rumbaugh chooses to die.

The choice the courts below describe is a choice of a desperate man seeking to use the State's machinery of death as a tool of suicide. It is no more nor less rational than the tragic choices of those driven to suicide by their tormented inner lives in a myriad of contexts. Although the District Court and the divided panel of the Fifth Circuit determined that Rumbaugh was rational in his calculation that continued life would for him bring misery, this was not the sort of free and uncoerced "rational" choice that we required in *Rees*. As Circuit Judge Goldberg said in dissent below:

> "[R]ational choice requires that the ends of [a person's] actions are *his* ends. That is, rational choice embraces 'autonomous' choice. If a person takes logical steps toward a goal that is substantially the product of a mental illness, the decision in a fundamental sense is not his: He is incompetent." *Rumbaugh* v. *Procunier*, 753 F. 2d, at 404.

This Court should not allow the erosion of the standard set in *Rees*, and it should certainly prevent such erosion in the context of capital punishment. In the context of capital punishment, such

an erosion allows a State's machinery of death to go forth, regardless of the presence of possible constitutional infirmities in a death sentence, because it has become a tool offered to the hopeless as a means of ending their own lives.

I dissent from the denial of certiorari.