STATE of Delaware, Plaintiff,

v.

Billie BAILEY, Defendant.

Superior Court of Delaware,
Kent County.

Submitted: Aug. 27, 1986.
Decided: Sept. 10, 1986.

Upon defendant's *pro se* application to withdraw motion for postconviction relief. Granted.

M. Jane Brady, Deputy Atty. Gen., Dover, for the State.

James A. Robb, Middletown, for defendant.

## OPINION

RIDGELY, Judge.

Defendant, Billie Bailey, has applied to this Court *pro se* to withdraw a motion for postconviction relief from his 1980 capital murder convictions and accompanying sentences of death. His court-appointed defense counsel contends that Bailey is not competent to make such a decision and that the purported waiver is involuntary. A hearing on the issues of Bailey's present competency and the proffered waiver was held on August 27, 1986.

### I. Background

In February of 1980, Billie Bailey was convicted by a jury of Robbery in the First Degree, 11 *Del.C.* § 832(a)(2), two counts of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del.C.* § 1447, and two counts of Murder in the First Degree, 11 *Del.C.* § 636(a)(1). The first-degree murder convictions stemmed from Bailey's entry on May 21, 1979 into the farmhouse of an 80–year-old retired farmer, Gilbert Lambertson, and his 73–year-old wife, Clara, subsequent to Bailey's robbery of a nearby liquor store. Without

any known provocation or prior disposition, Bailey shot the Lambertsons dead with the 25–caliber pistol used in the robbery and a .12–gauge shotgun belonging to Mr. Lambertson. The jury made a unanimous and binding recommendation to the Court pursuant to 11 *Del.C.* § 4209 that a sentence of death be imposed on each murder conviction.

Upon appeal to the Delaware Supreme Court, the convictions were affirmed with jurisdiction reserved on the issues raised pertaining to the death penalty. *Bailey v. State*, Del.Supr., 490 A.2d 158 (1983), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). Included in the issues on appeal was a challenge to the Trial Judge's ruling that Bailey was competent to stand trial. The Delaware Supreme Court held that the finding of the Trial Judge that Bailey was competent to stand trial was supported by the evidence and entitled to deference. *Bailey v. State*, 490 A.2d at 167.

The Delaware Supreme Court next considered the death penalty issues raised on appeal. The sentences of death were affirmed, and certiorari was again denied by the U.S. Supreme Court. *Bailey v. State*, Del.Supr., 503 A.2d 1210 (1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 195, 88 L.Ed.2d 164 (1985). With the process of direct review at an end, a presumption of finality and legality attached to the convictions and sentences of death. *Barefoot v.*

*Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983).

Defense counsel then applied to this Court for postconviction relief pursuant to Superior Court Criminal Rule 35(a).[1] Because defense counsel would necessarily have to testify at any evidentiary hearing on the motion, which included a challenge to her own effectiveness, leave to withdraw was granted, and substitute defense counsel was appointed. By letter dated January 30, 1986, substitute defense counsel informed the Court that, contrary to his advice, Bailey wanted to withdraw the motion for postconviction relief. Bailey had told his attorney that he wanted no further action taken by anyone to attack his convictions or sentences.

After conferring with counsel for the State and the defendant, the Court authorized psychological examinations of Bailey for the purpose of evaluating his present mental competency. Included in this process was a transfer of Bailey from the Delaware Correctional Center to the Delaware State Hospital for purposes of psychiatric and psychological evaluation. A report dated March 18, 1986 provided to the Court and counsel by S.M. Iqbal, Ph.D., staff psychologist at Delaware State Hospital, indicates that Bailey would not cooperate with efforts to evaluate him. Bailey refused to respond to questions, claiming a constitutional right not to talk. Efforts to interview Bailey were also made on March 14, 1986 and August 22, 1986 by Dr. Irwin

---

**1.** Superior Court Criminal Rule 35(a) provides:

(a) **Postconviction Remedy.** Any person who has been sentenced by the Court may apply by motion for postconviction relief for any meritorious claim challenging the judgment of conviction including claims: (i) That the conviction was obtained or sentence imposed in violation of the Constitution and laws of this State or the United States; (ii) that the Court imposing the sentence was without jurisdiction to do so; or (iii) that the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law. An application may be filed at any time, provided, however, that postconviction relief shall not be available so long as there is a possibility of taking a timely appeal from the judg-ment of conviction. Unless the motion and the files and records of the case show to the satisfaction of the Court that the applicant is not entitled to relief, the Court shall cause notice thereof to be served on the Attorney General, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the Court finds the applicant is entitled to relief, the Court may set aside the judgment, release the applicant from custody, resentence the applicant, grant the applicant a new trial, or otherwise correct the judgment of conviction as may appear appropriate. The Court need not entertain a second motion or successive motions for similar relief on behalf of the same applicant.

G. Weintraub, a psychologist retained by defense counsel.

## II. The Legal Standard

At issue is Bailey's present competency to decide whether to abandon potentially life-saving collateral relief from his convictions and sentences. In *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), the U.S. Supreme Court announced the test to be applied. The critical issue is

> whether [Billie Bailey] has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

384 U.S. at 314, 86 S.Ct. at 1506.

█ The choice by a defendant who has been sentenced to death with respect to continuing or abandoning further litigation is obviously a grave one that will directly affect whether he will live or die. Nonetheless, a choice favoring death can be made competently, knowingly, and intelligently; and, when so made, it will be honored by the courts. *See Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976); *Rumbaugh v. Estelle,* N.D.Tex., 558 F.Supp. 651 (1983), *aff'd sub nom. Rumbaugh v. Procunier,* 5th Cir., 753 F.2d 395 (1985), *cert. denied sub nom. Rumbaugh v. McCotter,* — U.S. ——, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985). *Compare Groseclose ex rel. Harries v. Dutton,* M.D. Tenn., 594 F.Supp. 949 (1984). As explained by Justice Rehnquist in his in-chambers opinion in the case of *Lenhard v. Wolff,* 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979):

> The idea that the deliberate decision of one under sentence of death to abandon possible additional legal avenues of attack on that sentence cannot be a rational decision regardless of its motive, suggests that the preservation of one's own life at whatever cost is the *summum bonum,* a proposition with respect to

which the greatest philosophers and theologians have not agreed and with respect to which the United States Constitution by its terms does not speak.

443 U.S. at 1312, 100 S.Ct. at 6.

## III. The Evidence

At the competency hearing, the Court first heard testimony from Billie Bailey. The colloquy between the Court and Billie Bailey after he was affirmed as a witness is as follows:

"THE COURT: I am going to ask you certain questions as I indicated, and if at any time you do not understand any of the questions, say so, and I will rephrase them for you.

"First, are you aware that you have been sentenced to death for the first-degree murders of Clara Lambertson and Gilbert Saxton Lambertson on May 21, 1979?

"MR. BAILEY: I am.

"THE COURT: Your former counsel, Nancy Jane Mullen, has filed with the Court on December 5, 1985, a motion for postconviction relief asking that the Court set aside your convictions and sentences. I am going to summarize that application for you at this time.

"The first of the grounds raised is the ruling of Judge Wright that you were competent to stand trial and the Delaware Supreme Court's ruling on appeal, neither of which addressed the issue of burden of proof or competency to stand trial, cannot be permitted to stand so that she has alleged that the rulings that you were competent to stand trial were in error.

"It is also alleged that your defense counsel at trial had a conflict of interest in continuing to represent you after the Trial Court's decision that you were competent to stand trial so that new counsel should have been appointed.

"It is also alleged that the Trial Judge and the Delaware Supreme Court applied too stringent a standard in rejecting your defense lawyer's application for a change

of a trial location from Kent County to New Castle County; in other words, that the case should have been moved to Wilmington.

"It is also alleged that the questioning of prospective jurors was inadequate and that you did not have an impartial and representative jury at the trial in violation of your rights.

"It is also alleged that the introduction into evidence of the victims' bloody clothing was improper in violation of your rights.

"It is alleged that certain statements made by you to Det. Collison were involuntary and should not have been admitted into evidence.

"It is contended that defense counsel should have been permitted to call Deputy Attorney General Dana Reed as a defense witness at your trial.

"It is also contended that certain opening and closing remarks of the prosecutor, Mr. Liguori, were improper and prejudiced your right to a fair trial.

"The motion also raises the issue and contends that your trial counsel were ineffective.

"The motion also contends that your counsel on appeal were ineffective. All of these are alleged violations of your constitutional rights.

"Your lawyer believes that these constitutional claims have merit. I have not yet decided the merit of any of these claims.

"Do you first understand that the Court has appointed a lawyer to assist you in presenting these claims and any other claims that he finds to be warranted from his review of the record in the case?

"Do you understand that, that you have a lawyer?

"MR. BAILEY: I do.

"THE COURT: Do you understand that you have a right to have this motion for postconviction relief decided by the Court?

"MR. BAILEY: I do.

"THE COURT: As part of that process, the Court may decide that an evidentiary hearing on the motion would be necessary. Do you understand that at any evidentiary hearing you would have the right to present evidence, to hear and question the witnesses, to testify or not testify yourself, and to appeal to a higher court any decision that was not in your favor?

"MR. BAILEY: I do.

"THE COURT: Do you understand that if the motion for postconviction relief were successful you would be granted a new trial?"

"MR. BAILEY: Don't want a new trial.

"THE COURT: That may be, but do you understand that if it was successful you would be granted a new trial?

"MR. BAILEY: I do.

"THE COURT: Do you understand that if you were granted a new trial and found not guilty you could not be held on any of these charges if that happened?

"MR. BAILEY: I do.

"THE COURT: Do you understand that if you were granted a new trial and found guilty of murder in the first degree a new penalty hearing on the issue of punishment would be held which could result in a sentence of life imprisonment instead of a sentence of death?

"MR. BAILEY: I do.

"THE COURT: Has anyone promised you anything in order to get you to withdraw your motion for postconviction relief?

"MR. BAILEY: No.

"THE COURT: Has anyone threatened you or forced you to apply to withdraw your motion for postconviction relief?

"MR. BAILEY: No.

"THE COURT: Do you understand that if the Court grants your request, the next thing that will happen in Court will be the setting of a date for the death sentence to be carried out?

"MR. BAILEY: It's not my request.

"THE COURT: Do you understand that if I grant your request to withdraw the motion—

"MR. BAILEY: It's not my request.

"THE COURT: What is not your request?

"MR. BAILEY: My request is not to grant the motion.

"THE COURT: All right.

"MR. BAILEY: I don't want it.

"THE COURT: What I am asking you is that if I do not grant the motion or I allow you to withdraw the motion, that the next thing that happens would be your execution?

"MR. BAILEY: (Nodding affirmatively.)

"THE COURT: You must answer verbally for the record.

"MR. BAILEY: Yeah.

"THE COURT: Have you discussed this withdrawal of your motion for postconviction relief fully with your attorney, Mr. Robb?

"MR. BAILEY: No.

"THE COURT: Would you like to discuss it further with him?

"MR. BAILEY: No.

"THE COURT: Have you discussed this with all of your relatives that you may wish to speak to about it?

"MR. BAILEY: No.

"THE COURT: Do you wish to speak to any relatives about it?

"MR. BAILEY: No.

"THE COURT: Is there anyone that you would like to discuss your decision with?

"MR. BAILEY: No.

"THE COURT: Do you voluntarily wish to have no further action taken by anyone to attack your convictions or death sentences?

"MR. BAILEY: Yup."

Bailey was also questioned by defense counsel and the Deputy Attorney General. In response to questions from defense counsel, Bailey said that he did not want a new trial because he had no rights. He told the Deputy Attorney General that it was never his choice that the motion for postconviction relief be pursued. He recalled the evidence presented at his trial, and he thought he would be found guilty no matter how many trials he had.

Dr. Irwin G. Weintraub is a consulting psychologist and diplomate in clinical psychology who was next called to testify by defense counsel. His initial contact with the defendant was on November 29, 1979. He again evaluated Bailey on February 11, 1980, just prior to the hearing before the Trial Judge on the issue of Bailey's competency to stand trial.[2] After the trial, Dr. Weintraub interviewed Bailey on January 7, 1982 and met with him on April 23, 1985; March 14, 1986; and August 22, 1986. The last psychological test which he was able to administer was the Rorschach test on January 7, 1982. Since that time, Bailey has not cooperated with him. The Rorschach test did not show any pathological deviations or any signs of psychosis or psychoneurosis. Dr. Weintraub testified that the 1982 test did show that Bailey had difficulty exercising self-control and that he anticipated a degree of hostility from the outside world that the average person does not perceive, which was not a mental illness.

On March 14, 1986, Dr. Weintraub was able to communicate with Bailey to some degree. He described Bailey as "angry, bitter, and resentful at any efforts which he allied with the defense efforts to try to attempt to get postconviction relief." At their August 22, 1986 meeting, Bailey simply walked into the examination room with a correctional officer, told Dr. Weintraub

2. At the February 12, 1980 competency hearing, Dr. Weintraub testified that Bailey was incompetent in the sense of being unable to assist counsel due to his expressed strong desire to be found guilty and die. Dr. Weintraub's opinion was contradicted by Dr. Robert Buckley, Medical Director of Delaware State Hospital. The Trial Judge resolved this conflict by finding no mental illness or defect and by finding Bailey legally competent to stand trial.

he did not want any further assistance of any sort or any further exposure to psychological testing. Bailey "just walked out and there was no way of even administering a brief interview."

Dr. Weintraub finds that Bailey is presently aware of what he is doing and the consequences of his behavior. Yet, it is his opinion that Bailey is incapable of consulting meaningfully with counsel concerning the present legal proceedings. The basis for his opinion is his conclusion that Bailey has "one rigid goal, tunnel vision." The goal is for the State to carry out the death penalty. "Consequently, when he views counsel or a psychologist coming in to possibly deter him from the goal that he is rigidly looking for, he will not cooperate."

Dr. Weintraub further finds that Bailey's reactions in rejecting efforts to challenge his convictions are involuntary from a psychological perspective. He bases this conclusion upon the longevity of Bailey's desire to have the State put him to death, the intensity of the emotionality that is propelling this desire, Bailey's history, and Dr. Weintraub's current evaluation indicating that, in reality, Bailey has poor self-control and poor emotional control.

According to Dr. Weintraub, Bailey is motivated on both conscious and unconscious levels. On a conscious level, Bailey wants the State to put him to death because death would put an end to the alienation, rejection, criticism, and abuse that Bailey feels he has unjustifiably suffered. On an unconscious level, Bailey is like an adolescent. He wants to punish the State—as a symbolic parent—by his execution, because the State would feel guilty, and he would have his "revenge."

The final witness was Staff Lt. Fletcher Pratt of the Department of Corrections. Lt. Pratt has observed Bailey on a regular and nearly daily basis for the last seven years. He testified that Bailey has been housed for approximately one year in what is known as "Pretrial." Bailey has a job at the prison repairing clothing and the option to work seven days a week, which he often does. Bailey chooses when he will work between the hours of 8:00 a.m. and 4:00 p.m. He is entrusted with scissors while working, and there has never been a breach or a shortage of any of the objects that he is given to work with in the supply area. He realizes that he is getting a special privilege that could be lost if he abused it. Bailey seems to interact in apparently normal fashion with those people he chooses to associate with. He is not a behavioral problem as he once was. He avoids confrontation. He is cooperative, and he has a "working relationship" with inmates and correctional officers. Bailey "knows what the rules are and he obeys them."

### IV. Conclusion

■ After considering all the evidence, including the demeanor of the defendant during the competency hearing, the Court finds that Bailey has the capacity to appreciate his present position and that he in fact understands it. He openly acknowledged to the Court that he is aware that he has been sentenced to death for the first-degree murders of Clara Lambertson and Gilbert Saxton Lambertson on May 21, 1979, and he fully understands that if he is permitted to withdraw his motion, he will be executed. He is aware of what he is doing and the consequences of his behavior.

The Court further finds that Bailey has the present capacity to make a rational choice with respect to continuing or abandoning further litigation. In preparation for and during this proceeding, Bailey has consciously chosen means which relate logically to his ends—the abandonment of further litigation and his execution.[3] He has elected not to cooperate with his defense counsel or psychologists because he does

---

**3.** Bailey's present capacity to make rational choices is underscored by his conduct over the past year relating to his prison job, his relation- ships with inmates and correctional officers, and his adherence to prison rules.

not want them to deter him from his goal. He has also weighed and chosen to answer all questions put to him by the Court, defense counsel, and the Deputy Attorney General during the competency hearing. I infer that Bailey decided that if he did not conduct himself properly and answer questions during the hearing, his proffered waiver would not be accepted. His recent conduct both in and out of court demonstrates his ability to reason logically. Although another person in his situation might elect to pursue the motion for post-conviction relief, that is not the test of Bailey's present competency. Bailey is convinced that he would again be convicted regardless of the number of trials he might have. The perceived futility of further litigation provides a rational basis for him to choose to abandon that litigation.

The Court also finds that Bailey is not suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises. The most recent psychological test results show no pathological deviations or any signs of psychosis or neurosis. Bailey has actually improved in his mental attitude and ability to exercise self-control since the 1982 Rorschach test was given.

█ The Court disagrees with Dr. Weintraub's opinion that Bailey is incapable of consulting meaningfully with his counsel. I further find that Dr. Weintraub's opinion that Bailey's reactions in rejecting efforts to challenge his convictions are involuntary is not substantiated by the evidence. The Court may reject an expert's opinion if it finds the facts to be different from those which formed the basis of the opinion, or if, after careful consideration of all the evidence in the case—expert and other—the Court disagrees with the opinion. *Compare State v. Wynn*, Del.Super., 490 A.2d 605 (1985) (experts' testimony on competency to stand trial issue rejected as not well supported by doctor's own findings). Bailey is capable of consulting meaningfully

with his counsel if he wants to, but he has made the choice not to because he wants to abandon further litigation and be executed. Simply put, Bailey is voluntarily uncooperative[4] with his counsel. I also find that Bailey does not presently have the poor self-control and poor emotional control which were among the factual predicates to Dr. Weintraub's opinion on the voluntariness issue.

Finally, it is clear from the Court's colloquy with Bailey that his waiver is offered voluntarily, knowingly, and intelligently.

Accordingly, the defendant's *pro se* application to withdraw the motion for post-conviction relief filed on December 5, 1985 is granted.

IT IS SO ORDERED.

---

**4.** Bailey was previously described in this way during the 1980 competency hearing by Dr. Robert Buckley, then Medical Director of Delaware State Hospital. Hearing Tr. p. 87.