In 1988, the appellant, Jerry Paul Henderson, was found guilty of capital murder and sentenced to death. We affirmed.Henderson v. State, 583 So.2d 276 (Ala.Crim.App. 1990). The Alabama Supreme Court affirmed our judgment, Ex parte Henderson,583 So.2d 305 (Ala. 1991), and the United States Supreme Court denied the appellant's petition for certiorari review. Hendersonv. Alabama, 503 U.S. 908 (1992).
On October 13, 1993, the appellant, through retained counsel, filed a post-conviction petition pursuant to Ala.R.Crim.P. 32, alleging ineffective assistance of trial and appellate counsel, as well as numerous other issues; these other issues were precluded from review because they either were raised at trial and/or on appeal and were decided adversely to the appellant, or could have been raised and were not. It appears from the record that the appellant's counsel filed the Rule 32 petition without consulting with the appellant. Before and after the scheduled hearing on the merits of the petition, the appellant's counsel were permitted to withdraw from the case, and the circuit court continued the hearing to allow the appellant time to find new counsel. Because the appellant was unable to find new counsel, the circuit court appointed counsel to represent him. At the hearing on the Rule 32 petition, held on April 22, 1997, the appellant, through appointed counsel, moved for dismissal of his petition. The record shows the following: *Page 486 
 "THE COURT: Did you want to say something into the record at this time?
 "MR. GIDDENS [appointed counsel for petitioner]: Yes, sir, Judge. I conferred with my client, Jerry Henderson, yesterday. I went over his petition with him, and yesterday was the first time he had actually seen the petition. He did not file it he tells me. He did not make those allegations. And looking at the petition myself, it was comprised, I believe, mostly of allegations of ineffective assistance of counsel — either things his lawyer did during the trial or did not do during the trial or did not prepare for trial. Mr. Henderson tells me that he has no complaints personally — or in this petition — he wasn't sure what most of the allegations even meant. He has no complaints with either Mr. Pitts or Mr. Adams. He feels they represented him as well as they possibly could have at trial, and . . . he wants his petition dismissed.
 "THE COURT: You have had plenty of time to talk to Mr. Henderson about this?
 "MR. GIDDENS: I've conferred with him. I've done several of these petitions. I've tried several capital murder cases. I've talked with him, and it is my opinion he is of sound mind, and he knows as much about what he is doing as anybody I have ever represented in my 11 years of doing this; and I believe that he fully understands what this petition means and what it means by being dismissed.
 "THE COURT: And he understands that there were allegations in the petition relative to incompetent counsel at the time of trial, and you went over that with him?
 "MR. GIDDENS: Yes, sir. He says that's not true. He's well satisfied that his attorneys did everything they could for him."
The circuit court then engaged the appellant in an extensive colloquy regarding his motion and its possible consequences, and granted his motion dismissing the petition.[1] The record shows the following:
 "THE COURT: Let me go over just a few things, Mr. Henderson, so we can further put some things in the record. You can just stay right where you are. You can hear me can't you, Mr. Henderson?
"DEFENDANT: Yes, sir. I can hear you fine.
 "THE COURT: You understand, Mr. Henderson, that you were tried in this courtroom. In fact, it will be 10 years ago or 9 years ago —
"DEFENDANT: In May.
 "THE COURT: In May 1988. You remember that the jury convicted you of capital murder at that time. You remember that don't you?
"DEFENDANT: Yes, sir. I do.
 "THE COURT: You remember the jury came back and made a recommendation to the court that you should be sentenced to the electric chair for your punishment. You remember that don't you?
"DEFENDANT: Yes, sir.
 "THE COURT: And you remember that sometime later — probably 30 or 40 days later that the court had another sentence hearing, and that at the conclusion of that sentence hearing the court went along with the recommendation of the jury and sentenced you to the electric chair. You remember that don't you?
"DEFENDANT: Yes, sir.
 "THE COURT: You also understand that your direct appeals of the case have all been affirmed. In other words, your appeal to the Alabama Supreme Court has been affirmed, and any appeal that may have gone to the federal system has been affirmed in the case, which means *Page 487 
you lost your appeal. You understand that don't you?
"DEFENDANT: Yes, sir.
 "THE COURT: Okay. Do you understand that by filing this Rule 32 which is a post — collateral action really — that you are saying that something happened in the trial back in 1988 that would justify you getting a new trial. Do you understand that's what this Rule 32 is all about?
"DEFENDANT: Yes, sir. I understand that.
 "THE COURT: Do you understand that if you dismiss your Rule 32 petition, which is what we are here for today to try, then the court cannot determine if anything did take place back then that would be in error. You understand that?
"DEFENDANT: Yes, sir. I understand.
 "THE COURT: Do you understand by dismissing this petition that you are a step closer to having your sentence to the electric chair carried out? Do you understand that?
"DEFENDANT: Yes, sir. I understand that.
 "THE COURT: Do you understand that by dismissing your petition for Rule 32 that you could hurt any appeal that you may have further on in the state courts and also in the federal courts if you decide to file a petition after today. Do you understand that?
"DEFENDANT: Yes, sir. I understand that.
 "THE COURT: Do you understand that by dismissing your petition that you could be speeding up your date of execution? Do you understand that?
"DEFENDANT: Yes, sir. I understand that.
 "THE COURT: In consideration of all of these things that I've talked about and what your lawyer's talked about and told the court, and after conferring with your lawyer, Mr. Steve Giddens, it is your decision to dismiss your Rule 32 petition and waive any further hearing today. Is that right?
"DEFENDANT: Yes, sir. That's correct.
 "THE COURT: And you are making this decision of your own free will, knowingly and voluntarily. Is that correct?
"DEFENDANT: Yes, sir. It is.
 "THE COURT: And no one has threatened you, coerced you, made promises or tricked you into making this decision that you have told us about today?
"DEFENDANT: No, sir they haven't.
 "THE COURT: And it's your decision after consideration of these things to dismiss your petition for Rule 32?
"DEFENDANT: Correct. Yes, sir.
"THE COURT: Anything from the State?
 "MR. CRENSHAW [assistant district attorney]: Only thing I would have, Judge — just to note for the record — that the petition was prepared by a Jack Gohn with a Baltimore, Maryland, firm. Could I just ask Mr. Giddens to ask his client whether Mr. Gohn has ever met Mr. Henderson?
"MR. GIDDENS: Jerry, have you even personally met Mr. Gohn?
 "DEFENDANT: Yes, sir. He come up to the prison and talked to me when they first put him on my case. He basically asked me what happened in the sense of what brought it all about and everything and what happened in the courtroom and all of that; and I told him all the details. Then he left, and I never seen him after that. He sent me some papers and stuff, but I didn't know what they was for — where he was making appeal — but he asked me did I feel like — he asked me then did I feel like I had adequate counsel. I said, `Yes, I do. I did.' He said, `Well, I don't.' I said, `Well, I believe Mr. Pitts and Mr. Adams done the best they could.' I said that Mr. Adams was actually jumping up and down like a jumping bean, you know. *Page 488 
Kind of upset Rumsey [district attorney] a little bit. I said that I thought they done good. But anyhow he said he was going to file that. He was my lawyer, so I left that decision up to him.
 "THE COURT: But today after talking to Mr. Giddens it is your desire to withdraw it and dismiss it?
"DEFENDANT: Yes, sir.
 "THE COURT: One other thing. The record would show that other lawyers that were in this case either never got qualified to serve — to be a lawyer in the State of Alabama as required by Alabama rules — or they asked the court to withdraw, and I think that's how we ended up with Mr. Steve Giddens. Of course, for the record I would show that Mr. Steve Giddens has been practicing law in this circuit for more than 10 years. In fact, about 12?
"MR. GIDDENS: Be 11, Friday.
 "THE COURT: I know personally that he has tried several capital murder cases in my courtroom, and he always does an outstanding job defending his clients, and so I wanted to put somebody on the case that would be able to represent Mr. Henderson appropriately; and I know that Steve would have done that if the case had gone forward, and I'm sure he would be prepared to go forward today, in fact. So, the court did pick Mr. Giddens, a well-experienced criminal defense lawyer. I say that you probably do 80% of your work in criminal defense, don't you?
"MR. GIDDENS: Yes, sir, at least.
 "THE COURT: I know he's tried capital cases in Talladega and I suspect Calhoun County also. I know he tried one in Coosa County.
"MR. GIDDENS: Yes, sir. I did.
 "THE COURT: And he's had cases that have been not guilty's in fact, I'm sure. More than one in fact. I'm confident Mr. Giddens will be appropriate to represent Mr. Henderson today. Is there anything else you want to cover?
"MR. CRENSHAW: No, sir. I don't have anything else.
 "THE COURT: Okay. The court, based on motion of the defendant, the court finds that the defendant is knowingly and freely and voluntarily making this motion and is not making it under threats, coercion or because of any promises or because of any trickery on anybody's behalf. He is doing it because he thinks it's the proper thing to do, and the court does hereby dismiss the petition for Rule 32. This matter is concluded."
Subsequently, the circuit court, on May 29, 1997, entered a formal order of dismissal, in which it made certain findings of fact and conclusions of law. The order, in part, states as follows:
 "The Court scheduled an evidentiary hearing on the Rule 32 petition for April 22, 1997. Appearing at the hearing for the State of Alabama was Assistant Attorney General Clay Crenshaw. Jerry Henderson was present at the hearing along with his appointed counsel, Steve Giddens. At this hearing, Mr. Giddens stated that he had discussed the Rule 32 petition with Henderson and that he discussed the allegations of ineffective assistance of counsel, which comprised most of the petition, with Henderson. Giddens stated that Henderson had no complaints about the performance of his trial counsel and that he wanted the Rule 32 petition dismissed. Giddens stated that he believed Henderson was of sound mind, and knew the consequences of dismissing the petition.
 "The Court observed Henderson in the courtroom and finds that Henderson is of sound mind and knows the consequences of dismissing his Rule 32 petition. The Court engaged Henderson in a colloquy to determine whether he did understand the consequences of dismissing his Rule 32 petition. . . . *Page 489 
 "Henderson stated that he realized the Rule 32 petition was filed in an effort to get a new trial. Henderson stated that he understood that he would not get a new trial. Henderson stated that he understood that, by dismissing the Rule 32 petition, he would be hurting any chances he might have on appeal from the Rule 32 appeal in the state appellate courts. Henderson stated that he knew, by dismissing his Rule 32 petition, that he was hurting his chances in federal court to win a new trial. Henderson stated that he knew, by dismissing the Rule 32 petition, he was speeding up the date of his execution.
 "This Court observed Henderson during the colloquy and finds that Henderson is aware of the consequences of dismissing the Rule 32 petition. At all times, Henderson was aware, oriented, and knowledgeable about the consequences of his decision to dismiss the Rule 32 petition. The Court finds that Henderson is making this decision knowingly and voluntarily, and that he has not been threatened coerced, or tricked into making the decision to dismiss the Rule 32 petition."
New counsel, retained by the appellant, then filed a notice of appeal on behalf of the appellant, and still other new and different retained counsel filed a brief with this court contending that the appellant "did not voluntarily, knowingly, and intelligently waive his post-conviction remedies under Rule 32," and asking that this court "reverse the order dismissing his Rule 32 petition and remand it to the circuit court for a full and fair evidentiary hearing." Attached to the brief is an affidavit signed by the appellant in which he expresses dissatisfaction in the proceedings that resulted in the dismissal of his petition, questions the fairness of the proceedings, and asks that he be given an evidentiary hearing on his petition. We note that the affidavit was never presented to the circuit court and that it is not a part of the record of the proceedings below or this record on appeal.
A condemned person may waive collateral challenges to his conviction and sentence provided he is mentally competent to do so. Rees v. Peyton, 384 U.S. 312 (1966); Smith v. Armontrout,812 F.2d 1050 (8th Cir.), cert. denied, 483 U.S. 1033 (1987); seeLonchar v. Zant, 978 F.2d 637 (11th Cir. 1992), cert. denied, sub nom. Kellogg v. Zant, 507 U.S. 956 (1993); Rumbaugh v. Procunier,753 F.2d 395 (5th Cir.), cert. denied, 473 U.S. 919 (1985); see also Gilmore v. Utah, 429 U.S. 1012 (1976). In Rees, the United States Supreme Court set out the standard to be used in deciding whether a person under sentence of death is mentally competent to choose to forgo further appeals and collateral attacks on his conviction and sentence. The test is
 "whether [the condemned person] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."
Rees, 384 U.S. at 314.
The circuit court found that the appellant was of sound mind and that he had the mental capacity to appreciate his position and the consequences of dismissing his post-conviction petition. The court also found that the appellant's decision to dismiss the petition was made voluntarily, knowingly, and intelligently.
The appellant's mental competence was not an issue at his trial[2] or on direct appeal, was not an issue at the hearing on *Page 490 
the appellant's motion to dismiss his petition, and has not been raised on this appeal. In fact, the appellant has never contended that he suffers from a mental disease or defect and there is no evidence suggesting that he does. There is no evidence in the record that he was not competent to dismiss his post-conviction petition; the record shows that he understood the legal options available to him and that he made a rational choice from those options.
During the colloquy with the circuit court, the appellant answered the court's questions in a responsive and coherent manner. He was knowledgeable about the legal system, the course of his trial, the challenges to his conviction and his sentence, and the post-conviction petition. The colloquy also demonstrates that he moved for a dismissal of the petition voluntarily, knowingly, and intelligently with an awareness of the consequences.
The circuit court's findings are essentially factual and are entitled to considerable deference and should be accepted unless shown to be clearly erroneous. Streetman v. Lynaugh,835 F.2d 1521 (5th Cir. 1988); Rumbaugh v. Procunier, supra.
We conclude, after reviewing the record, that the circuit court was correct in finding that the appellant possessed the requisite mental competence to dismiss his petition and that he did so voluntarily, knowingly, and intelligently.
For the above reasons, the circuit court's judgment granting the appellant's motion and dismissing the petition is due to be, and it is hereby, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, BROWN, and BASCHAB, JJ., CONCUR.
[1] The circuit judge who presided over the hearing on the appellant's Rule 32 petition is the same judge who presided over the appellant's trial.
[2] At trial, the appellant withdrew a plea of not guilty by reason of mental disease or defect before the case was submitted to the jury.
On Application for Rehearing
PATTERSON, Retired Appellate Judge.
On August 27, 1998, the appellant, Jerry Paul Henderson, filed an application for rehearing with an accompanying brief. In addition, he moved the court, pursuant to Ala.R.App.P. 39(k), to add or correct certain facts in its opinion affirming his conviction and sentence, Henderson v. State. 733 So.2d 484
(Ala.Crim.App. 1998).
In considering the appellant's application for rehearing, we have reviewed our opinion and decision of affirmance and have considered the appellant's brief filed in support of his application, and we are not persuaded to alter our holding. The case of Sibley v. State [Ms. CR-93-1665, March 8, 1996], ___ So.2d ___ (Ala.Crim.App. 1996), upon which the appellant places considerable reliance to support his contentions, is factually and legally distinguishable from the case at bar. We hold that the application for rehearing is due to be overruled. We also deem it unnecessary to alter or add facts in our opinion, as requested by the appellant; thus his Rule 39(k) motion is due to be denied.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
LONG, P.J., and McMILLAN, COBB, BROWN, and BASCHAB, JJ. concur. *Page 491 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 492 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 493 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 494 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 495 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 496 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 497 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 498 
[EDITORS' NOTE: THIS PAGE CONTAINS DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 878