**Robert STREETMAN, Petitioner,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. B–86–0388–CA.**

United States District Court, E.D. Texas, Beaumont Division.

Nov. 9, 1987.

Will Gray, Houston, Tex., for petitioner.

Jim Mattox, Atty. Gen., Paula Offenhauser, William Zapalac, Asst. Attys. Gen., Austin, Tex., for respondent.

## MEMORANDUM OPINION

COBB, District Judge.

Robert Streetman was convicted of the capital murder of Mrs. Christine Baker by the 88th Judicial District Court of Hardin County, Texas, on August 10, 1983. In Streetman's mandatory appeal to the Texas Court of Criminal Appeals, the conviction was affirmed. *Streetman v. State*, 698 S.W.2d 132 (Tex.Crim.App.1985).

On January 3, 1986, the trial court sentenced him to death by lethal injunction on February 6, 1986. At that time, Streetman informed the court that he wished his execution to be carried out as scheduled with no delay. However, on January 29, 1986, he agreed to permit the filing of a petition of writ of habeas corpus in the state convicting court.

Following an evidentiary hearing, the state court denied Streetman's petition, and the Texas Court of Criminal Appeals affirmed. Thereafter, Streetman sought habeas corpus relief in this court, which was denied. *Streetman v. McCotter*, 634 F.Supp. 290, 296 (E.D.Tex.1986). The Court of Appeals for the Fifth Circuit reversed and remanded, and ordered an evidentiary hearing on Streetman's claim he was denied effective assistance of counsel. *Streetman v. Lynaugh*, 812 F.2d 950 (5th Cir.1987).

Streetman's claim turned on allegations that his confessions of killing Mrs. Baker were coerced, and inadmissible in evidence against him, and therefore, his trial attorney's failure to urge their suppression constituted ineffective assistance of counsel.

Robert Streetman now informs the court that his confessions were not coerced, that his prior allegations to such effect before the Court of Appeals and this court were untrue, and he now wishes to waive further collateral review of his conviction and death sentence.

In addition to a motion to withdraw as counsel filed by Streetman's habeas attorney, the court is called upon to determine (a) whether Streetman is competent to waive further collateral review of his conviction; and (b) whether his trial attorney's failure to urge suppression of his confessions amounted to ineffective assistance of counsel.

## I.

In his state habeas petition, Streetman asserted that he had received ineffective assistance of trial and appellate counsel. His petition focused primarily on the conduct of his attorney, Stanley Coe, during the guilt phase of Streetman's trial. At the outset of the state hearing, Streetman's habeas counsel moved for a continuance, arguing that additional preparation was necessary in order to conduct a meaningful hearing. This motion was denied.

At the hearing, Streetman's trial attorneys, McNeely and Coe, gave conflicting testimony about the circumstances of Streetman's trial. McNeely testified that his investigation led him to believe Streetman's confessions were coerced, and thus inadmissible. Therefore, he thought Streetman might be acquitted.

Coe, on the other hand, testified that after discussing the case with Streetman and his family, he concluded no reasonable basis existed for challenging Streetman's confessions. This conclusion, coupled with the statements of Streetman's accomplices, who were prepared to testify against Streetman, led Coe to believe that his client stood little or no chance for acquittal. Therefore, he adopted a trial strategy designed to: concede guilt and avoid the death penalty by emphasizing the lesser punishment received by Streetman's equally guilty accomplices; disrupt the prosecution by bringing out the most damaging evidence in its least prejudicial form; lessen jury sympathy for the victim by establishing that she and her husband were engaged in illegal activities; and emphasizing that Streetman had a troubled and unfortunate life and was deserving of sympathy.

After exhausting his state remedies, Streetman filed an application in this court, which in addition to challenging Coe's trial conduct, alleged that Coe failed to adequately investigate the admissibility of his confessions. Streetman's habeas counsel assured this court that if granted an evidentiary hearing, he would produce several witnesses who would present material evidence not introduced in the state hearing. This court found that all material facts relevant to the voluntariness of Streetman's confessions had been adequately determined at the state evidentiary hearing, and denied relief.

The Court of Appeals, finding that Streetman's allegations regarding his confessions, if proven, would establish his ineffective assistance of counsel claim reversed:

> We have little difficulty concluding that the facts regarding the voluntariness of Streetman's various statements were not adequately developed at the state evidentiary hearing. Little, if any, testimony at that hearing was directed toward the measures taken by officials to secure

Streetman's confessions. Local officials involved in interrogating Streetman did not testify. Neither did Streetman or those members of his family who allegedly witnessed official misconduct. Streetman's habeas counsel avers that he will produce some or all of these witnesses if granted a federal evidentiary hearing.

812 F.2d at 958.

After his case was remanded to this court for an evidentiary hearing, and after the mandate was issued and had become final, Streetman wrote the following letter to the Court of Appeals:

May 5, 1987

Judges of the Fifth
Circuit Court of Appeals

I am writing this letter to ask and inform your court to vacate my stay of execution. I have spoken to my family and told them that I have decided to write you. Any hearings in my behalf would be a great waste of time and money because I would have to lie on the stand under oath if a hearing is held to prove coercement of my statement's.[sic] I do not want to lie in any sort of way about my statement's and I would be lieing [sic] if I got on the wittness [sic] stand and said they were coerced in any way or form. I was asked if I wanted a sedative to help me control my nerve's [sic] by Sherrif [sic] Holzapfel but I told him I would be alright [sic]. I was the one who told them about the murder of Mrs. Baker. Chief Deputy Ralph Osborn was actually in a state of shock when *I* mentioned the fact's [sic] of the murder to him. I waived my right's [sic] to have a lawyer present during all of the time spent taking statement's [sic] from me and really was treated well, just like I have said to Mr. Coe from the beginning. Also, yes I knew about the bypass of due procceedure [sic] but only for a few day's [sic] before I gave my signiture [sic] to go ahead with my appeal. To speed things up but I see its only slowing thing's [sic] down.

As the opinion from your court say's [sic], I am the only person who hold's [sic] the key of locking or unlocking the door to the information. I feel it right to inform your court that I have my family's backing and respect of my decision to be writing this to you and inform you that any hearing's [sic] will result in a waste of time and money as I stated at the first of this letter. In closing, I want to thank you for allowing me to write this and to be honest about what would happen at a hearing. I pray you will grant my wishes and vacate my stay of execution and order for a new date of execution be set.

The above is a true and accurate statement.

Thank you

/s/ Robert L. Streetman

■ In accordance with the Court of Appeals' mandate, this court held an evidentiary hearing to determine the voluntariness of Streetman's statements, and any other relevant matters. At the hearing, Streetman's attorney, Will Gray, vigorously asserted his motion to withdraw, and declined to cross-examine any of the state's witnesses, or to call or identify any who would testify for Streetman. In consideration of Gray's sixteen-month investigation of this case, his representations to this court, and the Court of Appeals that he could call ten witnesses besides Streetman in support of his claims, and because the Court of Appeals ordered a hearing so that this evidence could be heard, the court sought to afford Gray the opportunity to present this evidence:

The Court: No offers of affidavits by family members or anything like that?

Mr. Gray: No, sir.

The Court: You have never obtained affidavits from any family members?

Mr. Gray: I've got them on tape and video tape, but this young man is not going to change his mind this time. He wants to be executed. He wanted to from the start and then his family talked him out of it. I can't participate in assisting him in his effort to be executed. He had, in my opinion, a valid claim, but it's not valid now after that letter that he wrote to the 5th Circuit says that he

doesn't want to get on the stand and lie. If I can't tell whether he's lying or telling the truth, I can't put him on.

The Court: I have been ordered to hold a hearing. I'm going to hold a hearing as to the voluntariness of those confessions and you're going to be able to cross examine those officers and develop those things. I don't know what Streetman is going to say, but regardless of what Streetman says, I'm going to put those— require Mr. Zapalac, if he desires to do so, to put those people on to make their statements and you can cross examine them. If you think that you've got good reason to show such and such and such and so and so happened, then it seems to me, whether or not—if you can show by cross examination what Streetman said in the sworn petition before is, in effect, true. And you have more knowledge, and Mr. McNeely has more knowledge, about this case than anybody I can appoint.

The hearing proceeded, and Streetman was the first witness to testify. Streetman verified in detail the contents of his letter to the Court of Appeals. He further testified that his murder confession was neither coerced nor given in exchange for Valium. Chief Deputy Ralph Osborne next took the stand, and testified that after being given the *Miranda* warning, Streetman confessed to the theft of three-wheel vehicles, and that no threats, promises or improper inducements were made to Streetman. Osborne further testified that later in the evening, in response to the question, "Do you know anything about the homicide?" Streetman answered, "I shot the lady." At this point, questioning was terminated, and Deputy Osborne went to Sheriff Holzapfel, and told him about Streetman's confession. After Streetman was again given the *Miranda* warnings, he confessed to the murder in Sheriff Holzapfel's presence. Deputy Osborne further testified that Streetman's murder confession was not brought about by threats, promises or inducements, and that Streetman was brought before a Justice of the Peace twice that evening and given adequate warnings.

After Deputy Osborne finished testifying, the court inquired of Streetman:

The Court: Mr. Streetman, do you want to ask him any questions?

The Petitioner: No, sir. Everything he said is true.

The Court: You were taken before the J.P. both times?

The Petitioner: Yes, sir. Once was on a twenty thousand dollar bond and the next was on a hundred thousand dollar bond.

The Court: And they gave you the warnings, the Miranda warnings?

The Petitioner: Yes, sir.

The Court: And everything this officer said is true?

The Petitioner: Yes, sir.

The third and final witness was Sheriff Holzapfel, who also testified that Streetman voluntarily confessed to the murder, that no threats or improper promises were made, and specifically, that no Valium was given that evening in exchange for Streetman's confession. Holzapfel testified that he did offer to obtain a sedative for Streetman, but Streetman declined.

After Sheriff Holzapfel finished testifying, the court inquired of Streetman:

The Court: Do you have anything you want ask Sheriff Holzapfel?

The Petitioner: No, sir.

The Court: Is what he said essentially true?

The Petitioner: Yes, sir.

The Court: Beg your pardon?

The Petitioner: Yes, sir.

The Court: If there is anything that you want me to consider now that you contend what Sheriff Holzapfel said isn't true, I'll consider it.

The Petitioner: Everything he said is true.

In his letter to the Court of Appeals, and on the stand before this court, Streetman denies the truth of the allegations warranting this evidentiary hearing. Recanting these previous allegations, he has given a detailed rendition of the circumstances surrounding his confessions, and also vouches for the truth of the testimony given by the

officers who interrogated him. The testimony of these three witnesses, Streetman, Osborne, and Holzapfel, is in turn corroborated by that of attorney Coe at the state evidentiary hearing. Accordingly, the court finds that Streetman's confessions were voluntarily given, and admissible in evidence against him. It follows that Streetman was not rendered ineffective assistance of counsel by his attorneys' failure to urge their suppression.

## II.

■ On the morning of the evidentiary hearing ordered by the Court of Appeals, Will Gray moved to withdraw as Streetman's attorney because of a conflict of interest. Gray contends Streetman's assertions put him in the position of either assisting his client to commit suicide or offering testimony that is now claimed to be perjured.

Gray's motion is DENIED.

■ When an attorney agrees to undertake the representation of a client, he is expected to see the work through to completion. Tex.Code Prof.Resp. EC2–31 (Vernon 1973); *United States v. Ramey*, 559 F.Supp. 60, 62 (E.D.Tenn.1981); *see also,* Rule 3(a), Local Court Rules, United States District Court for the Eastern District of Texas (adopting Code of Professional Responsibility as guide to practice in this district). Withdrawal by an attorney before the case has concluded must be by leave of court for good cause shown. Tex.Code Prof.Resp. DR 2–110 (Vernon 1973); *Smith v. Anderson–Tully Co.*, 608 F.Supp. 1143, 1146 (S.D.Miss.1985). Whether an attorney should be allowed to withdraw in a given case is a matter entrusted to the sound discretion of the court and will be overturned on appeal only for an abuse of that discretion. *Cf. Broughten v. Voss*, 634 F.2d 880, 882–83 (5th Cir.1981). When the expressed reason for wanting to withdraw is the existence of a conflict of interest between attorney and client, the record must show an actual conflict before granting the motion is appropriate. *Mekdeci v. Merrell National Laboratories*, 711 F.2d 1510, 1520–21 (11th Cir.1983). Unsubstan-

tiated claims of a conflict are insufficient, especially when the client has expressed no dissatisfaction with the attorney's representation and has not asked counsel to withdraw. *Id.*

Gray has mischaracterized the situation in which he finds himself. As an experienced attorney, Gray is well aware that

> ... the lawyer should always remember that the decision whether to forego legally available objections or methods because of non-legal factors is ultimately for the client and not for himself.

Tex.Code Prof.Resp. EC 7–8 (Vernon 1973). His circumstance is no different from that faced by defense lawyers whose clients want to admit their guilt and refuse to pursue available defenses. *See, e.g., Autry v. McKaskle*, 727 F.2d 358 (5th Cir.1984) (death penalty case); *Foster v. Strickland*, 707 F.2d 1339 (11th Cir.1983) (non death penalty case). Streetman himself had taken this attitude at trial. Nonetheless, a not guilty plea was entered and his attorneys participated fully in both the guilt-innocence and punishment phases of the trial. Gray can likewise participate in these proceedings. Streetman has said only that he was not telling the truth when he previously stated that his confessions were coerced. Gray has represented to this court that, if a hearing was held, he would call witnesses besides Streetman to testify, including Sheriff Holzapfel and Chief Deputy Osborne, Mr. Michael McNeely, one of Streetman's trial attorneys; Mr. Houston Thompson, the attorney first appointed to represent Streetman after his arrest; and six of Streetman's family members, who were allegedly present during some of the police questioning. There has been no showing that Gray could not have called any or all of these witnesses, despite Streetman's change of heart concerning his own testimony. In fact, the record reflects that Sheriff Holzapfel and Chief Deputy Osborne both testified at the May 21 hearing, that Mr. McNeely and several members of Streetman's family were present in the courtroom, and that the court offered to conduct an *in camera* inspection of the statements given by family members that

Gray claims to have. There was a full opportunity to go forward with the proceedings even without Streetman's testimony.

■ In his May 5 letter, Streetman said only that he would be lying if he testified that his confessions were induced by threats and promises by the police. He has not expressed any dissatisfaction with Gray's representation. Contrary to Gray's claim in his motion to withdraw, Streetman's letter does not imply that counsel knew that Streetman was not telling the truth when he said that his confessions were coerced. Streetman has not asked that Gray withdraw from the case, nor has he joined in Gray's motion. Rather, it is Gray who appears to be dissatisfied because he does not have a "meaningful relationship" with his client. He clearly is not entitled to one. The Supreme Court has held that there is no sixth amendment right to a meaningful attorney-client relationship at trial and that a convicted defendant making this claim is not entitled to habeas corpus relief. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). By the same token, an attorney who has once agreed to represent a client should not be permitted to abandon his responsibilities merely because he is unhappy with the nature of the relationship with the client.

Moreover, when unwarranted delay will result from counsel's withdrawal from a case, the court should demand exceptional reasons before relieving the attorney of his duties. *Broughten v. Voss*, 634 F.2d at 882–83. Gray has been representing Streetman for over 16 months and is thoroughly familiar with the record in this case. He has conducted an extensive investigation and interviewed numerous witnesses. He asserted over one year ago that he was prepared to offer the testimony of at least ten witnesses in addition to Streetman to support his claims. After having been afforded the evidentiary hearing he has been claiming Streetman deserves, Gray seeks to inject further delay by hiring another attorney to duplicate his efforts and become equally familiar with the case. No compelling reason exists for Gray's withdrawal. Accordingly, Gray's motion to withdraw is DENIED.

## III.

At the evidentiary hearing held by this court on May 21, 1987, Will Gray asserted that Streetman was mentally incompetent and requested a psychiatric examination for his client. In effect, Mr. Gray is seeking to act as a "next friend" petitioner on Streetman's behalf.

■ A person seeking to act as a "next friend" for a death-sentenced inmate has no standing to intervene where the inmate who waives his rights to further judicial review is mentally competent. *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). The burden of showing that the death-sentenced inmate is incompetent is on the person seeking to act on his behalf. *Rumbaugh v. Procunier*, 753 F.2d 395 (5th Cir.1985), *cert. denied*, 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985). *See, Lenhard v. Wolff*, 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979); *Gilmore v. Utah*, 429 U.S. at 1012, 97 S.Ct. at 436; *Lovelace v. Lynaugh*, 809 F.2d 1136 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 966, 93 L.Ed.2d 1013 (1987); *Weber v. Garza*, 570 F.2d 511 (5th Cir.1978).

In *Rumbaugh*, the Fifth Circuit recognized the standard set forth by the Supreme Court in *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) as applicable to a determination whether a person is mentally competent to choose to forego further appeals and collateral attack upon his conviction and sentence:

> whether he has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

384 U.S. at 314, 86 S.Ct. at 1506. This test requires the answer to three questions:

> (1) Is the person suffering from a mental disease or defect?

(2) If the person is suffering from a mental disease or defect, does that disease or defect prevent him from understanding his legal position and the options available to him?

(3) If the person is suffering from a mental disease or defect which does not prevent him from understanding his legal position and the options available to him, does that disease or defect, nevertheless, prevent him from making a rational choice from among his options?

If the answer to the first question is no, the court need go no further, the person is competent. If both the first and second questions are answered in the affirmative, the person is incompetent and the third question need not be answered. If the first question is answered yes and the second is answered no, the third question is determinative; if yes, the person is incompetent, if no, the person is competent.

*Rumbaugh v. Procunier,* 753 F.2d at 398–99.

In *Rumbaugh,* the Fifth Circuit found sufficient evidence in the record to support the trial court's finding that Rumbaugh was competent to waive further review. While the Fifth Circuit did not establish any general guidelines for determining what evidence is sufficient to demonstrate a death-sentenced inmate's competency to choose to die, this court is not without judicial guidance.

■ In an analogous situation, the Supreme Court announced in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), that a separate procedural due process right to a competency hearing exists whenever the facts or events presented to a trial court raise a *bona fide* doubt as to the defendant's competency to stand trial. When federal habeas relief is sought on grounds of a violation of *Pate,* the petitioner has the burden of proving that the objective facts known to the trial court were sufficient to raise a substantial doubt as to competency. *Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979); *Wheat v. Thigpen,* 793 F.2d 621, 629 (5th Cir.1986); *Pedrero v. Wainwright,* 590 F.2d 1383, 1387 (5th Cir.1979). A hearing is not required by a naked suggestion that the defendant may be incompetent, *Jordan v. Wainwright,* 457 F.2d 338 (5th Cir.1972); rather, evidence must be presented which is sufficient to raise a *bona fide* and reasonable doubt as to defendant's competency. *Reese v. Wainwright,* 600 F.2d at 1093; *Grissom v. Wainwright,* 494 F.2d 30 (5th Cir.1974); *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973).

While no general standard for the nature or quantum of evidence necessary to trigger a competency proceeding has been articulated by the Supreme Court, three factors have been found to be relevant in assessing competency to stand trial; (1) the existence of a history of irrational behavior, (2) prior psychiatric opinion, and (3) the defendant's demeanor at trial. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975); *Rees v. Wainwright,* 600 F.2d 1091; *Chenault v. Stynchcombe,* 546 F.2d 1191, 1193 (5th Cir. 1977). Likewise, when a court must determine whether to grant a stay of execution based upon the filing of a "next friend" petition, the Supreme Court and Justice Rehnquist acting as Circuit Justice, have articulated factors which are relevant to the determination of whether the "next friend" has made a sufficient demonstration that the death sentenced inmate is incompetent to waive judicial review.

In terminating the stay of execution in *Gilmore v. Utah,* 429 U.S. at 1012, 97 S.Ct. at 436, Chief Justice Burger, with whom Justice Powell joined, concurring, found the state's determination of Gilmore's competence to waive his rights to direct appeal and any further judicial review to be firmly grounded in the record. Chief Justice Burger looked to Gilmore's own expressions of his choice, the psychiatric examinations conducted prior to his trial, and the psychiatric reports prepared by the prison psychiatrist and psychologists after Gilmore had made his decision to forego fur-

ther judicial review. *Id.* at 1015 n. 4 & 5, 97 S.Ct. at 438–39 n. 4 & 5.

In *Evans v. Bennett,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979), stay vacated, 440 U.S. 987, 99 S.Ct. 1986, 60 L.Ed.2d 370 (1979), Justice Rehnquist, acting as Circuit Justice for the First Circuit, granted a stay of execution after having concluded that there existed a probability that four members of the Court would vote to grant the requested relief. However, Justice Rehnquist noted that had he been casting his vote as a member of the full court, he would vote to deny the stay. He found correct the district court's determination that Evans' "next friend" lacked standing. The only evidence of incompetency presented by the "next friend" was an affidavit of a psychiatrist who stated that Evans refused to be examined and who concluded from conversations with other individuals that Evans was not able to make a rational decision. The rebuttal evidence which Justice Rehnquist and the district court found to be persuasive of competency to make a rational choice was that: (1) Evans had been evaluated prior to trial and was determined fit to stand trial; (2) there was no evidence of any intervening physical or mental disability arising between the time of trial and the filing of the petition had Evans' competency been questioned. Both courts found unpersuasive the argument that the choice of death over continued confinement was evidence of irrationality. *Id.* at 1303–05, 99 S.Ct. at 1482–84.

In *Lenhard v. Wolff,* 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979), stay vacated, 444 U.S. 807, 100 S.Ct. 29, 62 L.Ed.2d 20 (1979), Justice Rehnquist took the same position taken in *Evans.* Lenhard, a public defender, filed a next friend petition on behalf of Jesse Bishop, a death sentenced inmate.[1] Agreeing with the lower court's determination that the "next friend" had demonstrated insufficient evidence of Bishop's incompetence to waive further judicial review, Justice Rehnquist noted that Bish-

op had been found competent at the time of trial to plead guilty after an evidentiary hearing at which three examining psychiatrists reported that Bishop was competent. Justice Rehnquist further noted that there had been "no subsequent judicial determination of his competency to waive further litigation," but that a state-appointed psychiatrist had found Bishop competent based upon a four-hour interview. *Id.* at 1311–12, 100 S.Ct. at 6–7.

## IV.

■ The record reflects that on July 13, 1985, prior to trial, the defense filed a motion for mental examination and pretrial hearing on Streetman's competency to stand trial and insanity at the time of the offense pursuant to Streetman's notice of intention to raise evidence of an insanity defense. The defense specifically requested that the court appoint Dr. Curt Wills to examine Streetman. The trial court granted the defense's motion on July 20, 1983. On July 29, 1983, Dr. Wills informed the trial court that he had conducted the psychological examination of Streetman and was of the opinion that "[Streetman] was SANE on the day of the alleged offense, is not MENTALLY ILL, and is presently COMPETENT." (emphasis in original). Streetman's competency was not thereafter questioned; nor was an insanity defense raised at trial.

Streetman informed the state convicting court on January 3, 1986, that he desired no further efforts be extended on his behalf to delay his February 6, 1986, execution. Prior to sentencing and represented by counsel, Streetman requested that he be allowed to make a statement to the court in question and answer form. At that hearing, he informed the court that he understood the nature of his conviction and sentence and understood the purpose of the sentencing hearing, and that his request was being made without coercion and after discussion with his family.[2]

---

1. Bishop's case was in the same procedural posture as this case. Bishop had obtained full review by the state appellate court and refused

review of that petition by means of certiorari to the Supreme Court.

2. His statement was as follows:

On January 31, 1986, subsequent to Streetman's expressions in state court of his desire to waive judicial review, his reasons therefor, and his own expressions as to his competency, Dr. Jan Rand, Clinical Psychologist for the Texas Department of Corrections, conducted a psychological evaluation of Mr. Streetman. Dr. Rand observed no evidence of any psychotic, suicidal or depressive features, and concluded: "There is no evidence of psychopathology that would limit his ability to understand his present situation or to make judgments and act on his own volition."

As stated earlier, Streetman had a change of heart on January 29, 1986, and agreed to the filing of an application for habeas corpus. More than a year later, he changed his mind again and sent the above referenced letter to the Court of Appeals expressing his desire to waive further collateral review.

> Q. Now, do you want the court to know that after today's hearing, and he passes the sentence carrying out the punishment given to you by the jury, that you want no further appeals in state or federal court?
> A. That's right.
> Q. You don't want anybody bringing up the subject of insanity or person of unsound mind because you feel that you are a person of sound mind and have no reason to believe that you don't have a sound mind.
> A. Right.
> Q. I mean you don't know of any reason and haven't claimed for any reason that you are not a person of sound mind.
> A. None that I know of.
> Q. And don't want anybody bringing that up as a defense for your actions.
> A. No, sir.
> Q. You don't feel that you were insane at the time of this incident, and you don't feel that you are insane at the time the court is hearing this hearing today.
> A. That's right.
> Q. And you feel that is an adult decision on your part, and that you are making it as an adult, and that you have the right to make that decision.
> A. Right.
> Q. Now, it is your understanding of the law that after you are brought back for the court to pass the sentence and set a date to carry out the sentence to the jury, that it has to be as much as thirty days.
> Do you have any request of the court in setting that date?
> A. As soon as possible after that thirty-day period.

During the May 21, 1987, evidentiary hearing, the court questioned Streetman closely about the contents of the letter and about his desires regarding further proceedings challenging his conviction. Streetman acknowledged that all of the statements in the letter correctly expressed his feeling about further litigation. He clearly and unequivocally stated that he wanted the court to dispose of his current habeas petition and that he neither wanted to appeal an adverse decision, nor did he want anyone else to do so on his behalf. As the record reflects, he resolutely maintained that it is his considered decision to allow his execution to take place with no further delay:

> Q. In the last line of that letter, you say that "I pray you will grant my," and this is to the Court of Appeals, "Will grant my wishes and vacate my stay of execution and order a new date of execution to be set."

> Q. In other words, you are requesting the court, if the court sees fit, as far as you are concerned, around February the third.
> A. Yes, sir.
> Q. And you don't want anybody, no lawyer, federal court, state court, or anybody doing anything in your behalf or bringing anything up in your defense.
> A. That's right.
> Q. Have you thought this over and had several days to think it over prior to this date, and have you written letters to that effect and been thinking about it for over two years.
> A. Yes, sir.
> BY THE COURT: All right. Robert Streetman, come before the bench, please.
> MR. STREETMAN: (Complying)
> BY THE COURT: Mr. Streetman, in your own words, I want you to tell me just exactly what you said you want to, if you want to tell me that.
> MR. STREETMAN: I am just ready to get this over with.
> BY THE COURT: All right.
> MR. STREETMAN: I been ready. I been waiting, I am tired of waiting.
> BY THE COURT: Is there anything else that you want to say to me?
> MR. STREETMAN: Just don't let nobody step in my way.
> BY THE COURT: You want me to go ahead and pronounce sentence today?
> MR. STREETMAN: Yes, sir.
> Q. Is that what you want done?
> A. Yes, sir.
> Q. Are you sure of that?
> A. Yes, sir.

A. Yes, sir.

Q. Is it true you wrote that?

A. I wrote that.

Q. Have you been in any—in the last—when you wrote this letter, were you under any kind of coercion or compulsion or under any drugs or treatment, or is this your voluntary act?

A. Well, I'm on psychopathic drugs. That was done freely, yes.

Q. Do you understand what you were doing when you did that?

A. Yes, sir.

Q. Do you understand what you're doing when you testify today?

A. Yes, sir.

Q. And you know—I mean, do you fully understand,—

A. Yes, sir.

Q. —that you want an execution date set?

A. Yes, sir. And I realized that it was a mistake when I allowed it to go ahead with the first appeal.

Q. Why do you say it was a mistake, Mr. Streetman?

A. I felt it was a mistake on my part. I should have gone ahead with my first execution.

Q. Do you fully realize the importance of what you are saying here under oath today?

A. Yes, sir.

Q. And that the chances are very, very strong against your being granted any further stay at the conclusion of whatever proceedings we have today, and if that's appealed by Mr. Gray or some other lawyer, that you would be sentenced to be executed—

A. I'm aware of that.

Q. —and that sentence will probably be carried out?

A. I am aware of it.

Q. I just wanted to make sure that you understand that that means the death penalty.

A. I've had that since 1983.

Q. Yes, sir, I know you did, and you had a hearing in this court, whenever the record is, some time ago, and at first you were called and asked whether or not you wished to proceed with that hearing and if you wished Mr. Gray to seek a delay, and you said to me at that time, under oath, yes, you did wish to seek a delay. Do you recall that? I mean, you said—

A. Yes, sir, but that was on my family's behalf.

Q. All right. And why are you telling—why did you tell the 5th Circuit on May 5 in your letter, and why are you telling me today, that you no longer wish to seek a delay?

A. I have done cleared up what needs to be cleared up and—

There is no evidence suggesting that Streetman is now suffering from a mental disease or defect which prevents him from understanding the legal options available to him or from making a rational choice among those options. The evidence suggesting that Streetman is competent to make this decision is strong. First, Streetman has made a clear expression to the court of his desire to waive further judicial review. His answers to the court's questions in this regard were responsive and coherent, and reflect a clear understanding of the consequences of his chosen course of action. Second, Streetman was evaluated prior to his murder trial and was determined fit to stand trial. Although there was no suggestion of any intervening mental disability arising between the time of trial and the filing of this petition, Streetman was evaluated a second time and determined competent to act on his own behalf.

There is no evidence in the record that Streetman is incompetent to elect to forego collateral review. Nor has any *bona fide* doubt as to Streetman's competency been raised. The assertion that the election to forego further avenues of relief is, in and of itself, evidence of incompetency has been rejected by Justice Rehnquist:

The idea that the deliberate decision of one under sentence of death to abandon possible additional legal avenues of attack on that sentence cannot be a rational decision, regardless of its motive, suggests that the preservation of one's own life at whatever cost is the *summum bonum,* a proposition with respect to which the greatest philosophers and theologians have not agreed and with respect to which the United States Constitution by its terms does not speak.

*Lenhard v. Wolff,* 443 U.S. at 1312–13, 100 S.Ct. at 7.

### V. CONCLUSION

Streetman was not rendered ineffective assistance of counsel by his trial attorney's failure to urge suppression of his confessions. The evidence having been fully developed at the evidentiary hearing and now of record shows these confessions, which were the most damaging evidence in the state's case against Streetman, were not coerced or subject to any exclusionary rule. The trial strategy adopted by Attorney Coe, based on the assumption that these confessions would be admitted in evidence, offered the only realistic hope of Streetman obtaining anything less than the death penalty.

In addition, the court finds there is no conflict of interest warranting Will Gray's withdrawal from this case.

Finally, Streetman has made clear to this court that he desires to have this petition resolved and that no further efforts be made to attack his conviction and death sentence. Streetman is competent to make a rational choice with respect to abandoning further litigation. There having been no showing of incompetence on Streetman's part, the court finds that the stay of execution should be vacated, and the petition for habeas corpus relief should be dismissed.

IT IS SO ORDERED.