JANUARY 7, 1988

No. A–527. STREETMAN v. LYNAUGH, DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS. Application for stay of execution of sentence of death, presented to JUSTICE WHITE, and by him referred to the Court, denied. JUSTICE BLACKMUN and JUSTICE STEVENS would grant the application.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant the application for a stay and vacate the death sentence in this case. Even if I did not hold this view, for the reasons stated below I still would be compelled to vote to overturn this sentence.

I

Streetman was convicted in Texas of murder and sentenced by a jury to die. Pursuant to Texas law, Tex. Code Crim. Proc. Ann.,

Art. 37.071(b) (Vernon 1981 and Supp. 1988), the jury was told that if they answered "yes" to two special questions, Streetman would automatically be sentenced to death.

The first question asked "whether the evidence established beyond a reasonable doubt that the murder of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." As JUSTICE BLACKMUN has observed, an affirmative answer to this question is generally a foregone conclusion because intent is usually an element of the underlying crime of capital murder. *Barefoot* v. *Estelle*, 463 U. S. 880, 916–917, and n. 1 (1983) (dissenting opinion). Thus, Streetman's life hinged on the second question: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

The jury returned with their answers: "Yes" to both questions. The sentence was accordingly fixed at death, and the Texas Court of Criminal Appeals affirmed the judgment. 698 S. W. 2d 132 (1985). Streetman's first state and federal habeas corpus petitions (raising issues unrelated to the issue discussed below) were denied. 634 F. Supp. 290 (ED Tex. 1986); 812 F. 2d 950 (CA5 1987); 818 F. 2d 865 (CA5 1987). He then filed a second state habeas corpus petition in the state court calling into question, *inter alia*, the constitutionality of the Texas death penalty scheme's treatment of mitigating evidence. The petition was denied in state court, and the subsequent second federal habeas corpus petition was denied by the District Court and the Court of Appeals. 674 F. Supp. 229; 835 F. 2d 1519; 835 F. 2d 1521 (1988). This application for a stay followed.

## II

In 1976, this Court approved generally the Texas death penalty scheme. *Jurek* v. *Texas*, 428 U. S. 262 (1976). In the course of its analysis, the Court considered the treatment of mitigating evidence during the sentencing phase. The joint opinion announcing the judgment found that the Texas courts had construed the second special question "so as to allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show." *Id.*, at 272 (opinion of Stewart, Powell, and STEVENS, JJ.).

In *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978), the plurality held that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Ibid.* (opinion of Burger, C. J.). The Court has applied and explained *Lockett* in the nine years since it was announced. In *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), the Court applied *Lockett* to strike a state statute that precluded the sentencer from considering certain relevant mitigating *evidence*, in support of mitigating factors. Later, in *Skipper* v. *South Carolina*, 476 U. S. 1 (1986), the Court expressly stated that the sentencer must be given *all* mitigating evidence, defined as any evidence that "might serve 'as a basis for a sentence less than death.'" *Id.*, at 5 (quoting *Lockett, supra,* at 604).

This line of cases culminated last term in *Hitchcock* v. *Dugger*, 481 U. S. 393 (1987). That unanimous opinion began "[w]e have held that in capital cases, '"the sentencer"' may not refuse to consider or '"be precluded from considering"' any relevant mitigating evidence." *Id.*, at 394 (quoting *Skipper, supra*, at 4, in turn quoting *Eddings, supra*, at 110). In considering the validity of a Florida death sentence, the Court concluded that "it could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of non-statutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of *Skipper* . . . , *Eddings* . . . , and *Lockett* . . . ." 481 U. S., at 399.

From these cases it is clear that *all* relevant mitigating evidence must be available for consideration by the sentencer. The reasons underlying this firmly established rule lie in the unique nature of the death penalty. "[D]eath is a 'punishment different from all other sanctions,' . . . and . . . therefore the considerations that inform the sentencing decision may be different from those that might be relevant to other liability or punishment determinations." *Booth* v. *Maryland*, 482 U. S. 496, 509, n. 12 (1987) (quoting *Woodson* v. *North Carolina*, 428 U. S. 280, 303–304, 305 (1976) (plurality opinion of Stewart, Powell, and STEVENS, JJ.)). To this end, mitigating evidence that might be excludable in noncapital-sentencing procedures may be crucial in a capital case.

In *Sumner* v. *Shuman*, 483 U. S. 66 (1987), this Court held categorically that mandatory death sentences are unconstitutional, a determination foreshadowed by *Woodson, supra.* These cases recognize that a sentencer cannot make a judgment based on the facts of the particular case without all relevant mitigating evidence, *Sumner, supra,* at 75–76, and n. 5. Although disallowing such evidence would produce uniformity of sentences, the Court has "recognize[d] that a consistency produced by ignoring individual differences is a false consistency." *Eddings, supra,* at 112. This "false consistency" is a natural consequence of the unadorned jury instructions given under Texas law.

In the instant case, the record discloses that Streetman has had a history of mental illness, stemming from an injury incurred while he was in the fifth grade, a circumstance that in every other jurisdiction would be considered mitigating. Yet the jury that sentenced him to die could draw but one inference from this evidence: Streetman posed a substantial threat of future dangerousness. Streetman complains that in Texas, evidence that could evoke feelings of sympathy or convince a jury that the defendant is not culpable enough to deserve death is perversely transformed into a factor militating solely in favor of death, in violation of *Lockett, supra,* and its progeny. Indeed, without an instruction informing the jury that the second special question is far broader than its words imply, he was faced with a true dilemma: introduce the evidence and run the risk that the jury will use it to answer affirmatively the second special question, or exclude the evidence entirely. We have already granted certiorari to consider this very question: "whether the jury must be instructed on the effect of mitigating evidence under the Texas capital punishment scheme." *Franklin* v. *Lynaugh, ante,* p. 891. Nonetheless, the Court today refuses to stay Streetman's execution.

### III

Streetman, in his application for stay raises precisely the question we agreed to consider in *Franklin.* Despite the fact that there were sufficient votes on this Court to hold Streetman's case for *Franklin,* there were not enough votes to grant Streetman's application for a stay. Had Streetman been convicted of bank robbery, this would be of no moment. The Court would simply hold Streetman's case until *Franklin* was decided, and then take appropriate action. But death is different. Due to the unique

nature of the penalty, the relief that we could give any other type of habeas corpus petitioner is unavailable to Streetman. His case will be moot long before we can resolve *Franklin*—he will be dead. Therefore, we are presented with the same ironic situation as occurred in *Watson* v. *Butler,* 483 U. S. 1037 (1987), in which the normal and time-tested procedures of this Court are overcome by the different nature of the death penalty. Death is certainly different, but I had never believed it to be different in this way.

## IV

The courts below have held that Streetman's habeas corpus petition does not actually raise the question presented in *Franklin* because he failed to preserve the issue at his trial, I suppose by failing to request a particular jury instruction. However, it is clear that under Texas law the trial court was discouraged from giving a mitigating evidence instruction. *Stewart* v. *State,* 686 S. W. 2d 118 (Tex. Crim. App. 1984). In fact, the court in *Stewart,* over a vigorous dissent, specifically held that "no jury charge regarding evidence of any mitigating circumstances [is] necessary since the questions prescribed under Article 37.071 clearly allow the jury to grasp the logical relevance of mitigating evidence." *Id.,* at 121 (citing *Quinones* v. *State,* 592 S. W. 2d 933, 947 (Tex. Crim. App. 1980)). That holding has been reiterated in numerous cases. *Clark* v. *State,* 717 S. W. 2d 910 (Tex. Crim. App. 1986); *Fierro* v. *State,* 706 S. W. 2d 310 (Tex. Crim. App. 1986); *Johnson* v. *State,* 691 S. W. 2d 619 (Tex. Crim. App. 1985); *Lackey* v. *State,* 638 S. W. 2d 439 (Tex. Crim. App. 1982); *Adams* v. *State,* 577 S. W. 2d 717 (Tex. Crim. App. 1979). Additionally, Texas has adopted pattern jury instructions. The instructions for death cases say nothing regarding how the jury is to consider mitigating evidence that actually supports a finding of future dangerousness. P. McClung, Jury Charges for Texas Criminal Practice 75–78 (rev. ed. 1981). If, as a matter of course and relying on *Stewart* and *Quinones* as well as the pattern jury instructions, Texas trial judges refuse to give such instructions when asked, Streetman surely was under no duty to make the futile request. Of course, whether or not this is the case in Texas is a question of fact. A habeas court has a duty to determine whether a hearing is necessary to resolve this question. See Habeas Corpus Rule 8. I believe that Streetman is entitled to an opportunity to make the required showing before he is executed.

Nor do I believe that Streetman could reasonably be held barred under an abuse-of-the-writ theory, as the District Court apparently found. The *Franklin* claim was not foreseeable prior to this Court's issuance of the stay order. In light of this Court's decision in *Jurek, supra,* upholding the Texas scheme, and the citation to *Jurek* in *Lockett, supra,* coupled with the Fifth Circuit's explicit rejection of the claim, it was not abusive for Streetman to fail to raise the issue in his first federal petition.

Finally, as to the failure to raise the question on direct appeal, there is certainly no bar. Precedent in the Fifth Circuit and statements from this Court provided cause for the failure. See *Reed* v. *Ross,* 468 U. S. 1, 12–16 (1984).

For these reasons, I cannot conclude that Streetman's *Franklin* claim was procedurally barred. Consequently, I must dissent from the refusal of this Court to stay Streetman's death until we definitively resolve the questions his petition presents.

## V

Streetman also raises a broader challenge to the Texas death penalty scheme. He alleges that given the nature of the special death penalty questions, no instruction, however phrased, could adequately inform the jury of its constitutional duty to consider properly all mitigating evidence. As a panel of the Court of Appeals for the Fifth Circuit has cogently demonstrated, it is time for this Court to reconsider the Texas system in light of the intervening precedent. *Penry* v. *Lynaugh,* 832 F. 2d 915 (1987). The persuasive opinions of Judges Reavley and Garwood conclusively demonstrate to me that certiorari should be granted to consider such a challenge. Consequently, I dissent from the Court's refusal to consider this broader claim. It may be true, as some have argued, that if the Texas death penalty statute is unconstitutional, the fault lies with this Court rather than with the State. But even if that is so, it is the height of unfairness to make Streetman pay for our mistake.

I dissent.