United States Court of Appeals,

Fifth Circuit.

No. 91–8090.

Eugenio L. RODRIGUEZ, Plaintiff–Appellant,

v.

Mike HOLMES, et al., Defendants–Appellees.

June 24, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Eugenio L. Rodriguez appeals from the district court's dismissal under Fed.R.Civ.Pro. 12(b)(6) as time-barred his civil rights complaint filed *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief as well as for compensatory and punitive damages. We have in this case a *pro se* litigant who was caught by the repeal of a tolling statute, who scrupulously followed to his detriment the dictates of the district court and of this Court, and who exhausted his state habeas remedies before filing his federal civil rights suit. Under the unusual circumstances of this case, we reverse and remand for the district court to consider on the merits his potentially valid claim.

I. FACTS AND PRIOR PROCEEDINGS

In November 1986, Rodriguez, an inmate at the Texas Department of Corrections, filed a civil rights action under 42 U.S.C. § 1983 against former Ector County District Attorney Mike Holmes, Ector County Sheriff Bob Brookshire, former Texas Ranger Pedro Montemayor, and former criminal investigator Monnie Weddel. Rodriguez alleged that, on February 13, 1983, while in custody in Eddy County, Carlsbad, New Mexico, on counts of aggravated robbery, appellees Montemayor and Weddel "visited" Rodriguez to investigate his involvement in various other crimes, primarily murders. Subsequently, over the next several weeks, he was brutally beaten, either illegally extradited or

kidnapped from New Mexico and transferred to Ector County, Odessa, Texas, placed in isolation cells, kept from communicating with an attorney, and denied basic necessities, adequate medical care, as well as assistance. He asserts that all this misconduct was for the sole purpose of obtaining a confession used to convict him of a murder in Ector County.[1]

Throughout the course of his many procedural filings, Rodriguez has presented a litany of claims: (1) brutality and/or unnecessary use of excessive force and battery; (2) false arrest; (3) false imprisonment; (4) malicious prosecution; (5) denial of counsel; (6) corruption and/or gross negligence and/or abuse of state seal and office; (7) denial of medical attention; and (8) kidnapping and/or illegal extradition from one state into another. On this appeal, Rodriguez has refined his claims to place emphasis on false arrest, false imprisonment, and malicious prosecution. He asserts violations of the Fourth, Sixth, Eighth, and Fourteenth Amendments.[2] We recognize that these are the allegations of a *pro se* complaint so they "must be read in a liberal fashion," and " 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Richardson v. Fleming,* 651 F.2d 366, 368 (5th Cir.Unit A 1981) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)).

On July 31, 1987, the district court concluded that the basis of Rodriguez' section 1983 claim went to the constitutionality of the state-court conviction and dismissed the complaint without

---

[1]Rodriguez attempts to attribute culpability to the appellees for the various violations. Generally, he contends that Montemayor and Weddel performed most of the beatings. He also asserts that during the period of isolation and beatings, he sent numerous letters and made several requests to Sheriff Brookshire claiming that he was being mistreated and physically abused. Further, Rodriguez contends that Holmes intentionally and deliberately disregarded his rights and requests and "masterminded" his conviction. "After so much punishment inflicted that he could not tolerate it anymore," Rodriguez wrote and signed a "confession" which Holmes turned down on three occasions because it was insufficient to support a conviction.

[2]Discrepancies exist between the appellees and the district court as to what assertions by Rodriguez constitute pendent state law claims. While the court refers to malicious prosecution as the sole pendent state law claim, the appellees periodically refer to false arrest, false imprisonment, as well as malicious prosecution as pendent state law claims. We follow the district court's determination.

prejudice. It found that the action was in effect a habeas corpus action under 28 U.S.C. § 2254 necessitating the exhaustion of state remedies.[3] On December 29, 1987, this Court affirmed the district court's dismissal in an unpublished, per curiam opinion.

Our inquiry has produced the following pivotal procedural events following our December 29, 1987, affirmance.[4] This *pro se* litigant first began the legal maze by following our 1987 mandate and filing a post-conviction application for writ of habeas corpus with the Judicial District Court of Ector County, Texas, the convicting court. On September 21, 1987, the state court denied the application without written order. On January 6, 1988, the Texas Court of Criminal Appeals also denied Rodriguez' habeas application without a written order. On May 6, 1988, Rodriguez then applied for federal habeas corpus. On January 5, 1989, the federal district court denied his petition for relief, finding that Rodriguez had presented no basis for overcoming the strong presumption that his guilty plea was made knowingly and voluntarily.

Also, in December 1988, Rodriguez had sought permission to "refile" his section 1983 action based on "new discoveries" and to have counsel appointed. On February 21, 1989, the district court denied his motion. It found that Rodriguez' claims were not sufficiently related to the previous civil suit which was in the nature of a suit for habeas relief. The court also denied his request for counsel. The district court, nonetheless, stated that Rodriguez was free to proceed under a new civil rights suit

---

[3]Habeas corpus relief constitutes the exclusive initial cause of action for a state prisoner when the basis of the section 1983 claim goes to the constitutionality of the state-court conviction and draws into question the validity of the fact or length of confinement. *See, e.g., Richardson,* 651 F.2d at 373. Rodriguez' section 1983 complaint would, if proved, undermine the validity of his conviction, thus necessitating that he be required to exhaust his state remedies. Upon demonstration of exhaustion, Rodriguez would then be eligible to proceed with his claims under section 1983 in the federal courts. *See, e.g., Mills v. Criminal District Court No. 3,* 837 F.2d 677, 680 (5th Cir.1988); *Delaney v. Giarrusso,* 633 F.2d 1126, 1128 (5th Cir.Unit A 1981) (per curiam).

[4]This information has been extracted partly from the record as presented on appeal but also from the district court's records in associated proceedings. Rodriguez states that "[d]uring the years 1983, 1984, 1985, 1986, 1987, 1988, and 1989 appellant went throu [sic] a lot of process to prove his innocence, all those were denied."

for the redress of any violations of his constitutional rights.

At about the same time of these federal court actions, on January 23, 1989, the convicting state court apparently *sua sponte* held an evidentiary hearing with regard to newly discovered evidence in the murder to which Rodriguez had confessed. The evidence was that another person, Juan Balderrama, had confessed to the same murder. At the conclusion of the hearing, the court issued its finding that a new trial should be granted based on the new evidence. On May 3, 1989, the Texas Court of Criminal Appeals, however, denied the trial court's recommendation without written order. Still seeking relief, Rodriguez returned to the federal district court and filed another federal habeas corpus application asserting three central claims: (1) Ector County Sheriff's Department threatened and forced Rodriguez into making false statements admitting his guilt and entering a plea of guilty; (2) newly discovered evidence established that he did not commit the offense; and (3) counsel ineffectively assisted Rodriguez when counsel allowed him to plead guilty to an offense based on a poorly investigated confession.

On October 16, 1989, the district court found that Rodriguez had exhausted his potential state remedies. Further, the court concluded that reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that a new trial was necessary in the interests of justice. The district court remanded the case to the convicting court for retrial of Rodriguez' Ector County murder conviction or dismissal of the indictment.[5]

The state trial court dismissed the prosecution on November 30, 1989. The state averred that

[5]Though maintaining his innocence, on November 28, 1983, in Ector County, Texas, Rodriguez had pleaded guilty to the felony offense of murder with the use of a deadly weapon, and the state district court assessed his punishment at life in the state penitentiary. In 1986, when he first initiated his section 1983 action, he was confined to the Texas Department of Corrections pursuant to this conviction and also pursuant to a life sentence from Andrews County, Texas, also for the felony offense of murder. The record indicates that the Andrews County indictment was pending at the time Rodriguez entered a plea of guilty in the Ector County felony cause. Nine days after pleading guilty in Ector County, Rodriguez pleaded guilty to murder in Andrews County and was given a life sentence there also.

it "no longer wishe[d] to prosecute [Rodriguez], as another defendant has plead guilty to the murder of Ocie Smith Speed." Rodriguez then initiated the current section 1983 case by presenting his application for leave to proceed *in forma pauperis* in the district court. After the district court granted Rodriguez leave to proceed *in forma pauperis,* the court on May 29, 1990 filed his complaint.[6]

On November 26, 1990, appellees filed a motion under Fed.R.Civ.P. 12(b)(6) seeking dismissal of Rodriguez' claims under section 1983 on the basis that the two-year statute of limitations had expired prior to the filing of Rodriguez' suit. The motion also asserted that the pendent state law claim of malicious prosecution should be dismissed for lack of an independent jurisdictional basis, and that the appellees were entitled to either absolute or qualified immunity. Rodriguez' response to their motion to dismiss relied primarily upon his belief that he was under a disability for statute of limitations purposes due to incarceration.

On February 1, 1991, the district court, agreeing with the appellees' contention that the requisite statute of limitations period had expired, dismissed the action as time-barred. The court held that to be timely, the complaint would have had to have been filed within two years of September 1, 1987, the date on which Texas abrogated the rule tolling limitations for imprisoned persons. Although the court relied on its prior admonition to Rodriguez in February 1989 that he could file a new section 1983 action, it did not mention that it had not granted Rodriguez habeas relief relative to his murder conviction until October 16, 1989. On January 7, 1991, Rodriguez, *pro se* and *in forma pauperis,* appealed.

## II. DISCUSSION

Because no specified federal statute of limitations exists for section 1983 suits, federal courts

---

[6]The record shows that Rodriguez' motions were dated November 8, and November 15, 1989, and filed December 1, 1989.

borrow the forum state's general or residual personal injury limitations period. *See Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989). In Texas, the applicable period is two years. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). Further, federal courts considering the timeliness of inmates' section 1983 actions apply the states' tolling provisions to statutory limitations periods. *Hardin v. Straub,* 490 U.S. 536, 109 S.Ct. 1998, 2003, 104 L.Ed.2d 582 (1989); *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992) (per curiam). Until 1987, Tex.Civ.Prac. & Rem.Code Ann. § 16.001 (the successor statute to Tex.Rev.Civ.Stat.Ann. art. 5535) provided that imprisonment was a disability which tolled the running of the two-year statute of limitations. Effective September 1, 1987, the statute was amended to eliminate the legal disability for tolling purposes in Texas. Tex.Civ.Prac. & Rem.Code § 16.001 (West Supp.1992). For prisoners, limitations then tolled commenced running on September 1, 1987. *Ali v. Higgs,* 892 F.2d 438, 439 (5th Cir.1990). Also, the limitations period now begins to run when a cause of action accrues irrespective of imprisonment. *Jackson,* 950 F.2d at 265.

Although state law controls the limitations period for section 1983 claims, federal law determines when a cause of action accrues. *Brummett v. Camble,* 946 F.2d 1178, 1184 (5th Cir.1991), *petition for cert. filed,* 60 U.S.L.W. 3689 —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— (U.S. Mar. 19, 1992) (No. 91–1515). The federal standard provides that "the statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir.1987) (footnote omitted).

Rodriguez' seminal argument on appeal is that the statute of limitations should be tolled in his case pursuant to Tex.Civ.Prac. & Remedies Code Ann. § 16.001 because he was imprisoned at the time he filed his complaint, and has been continuously incarcerated since June 1982. Further, he had stringently followed the district court's dictates and had not pursued a federal civil rights action under section 1983 until he exhausted his state remedies on October 16, 1989, when the district court

granted Rodriguez habeas relief relative to his murder conviction. Admittedly, Rodriguez' assertion fails to account for the 1987 amendment to Texas' law on imprisonment as a disability for statute of limitations purposes. Thus, on its face, Rodriguez' action which was initially filed on December 1, 1989, appears to be barred by the applicable statute of limitations. Moreover, as earlier stated, technically Rodriguez exhausted his state habeas remedies on January 6, 1988 when the Texas Court of Criminal Appeals denied Rodriguez' habeas application without a written order. But there is the unusual circumstance in this case that the convicting court *sua sponte* reopened Rodriguez' case and held that a new trial was merited. Then the Texas Court of Criminal Appeals denied the new trial motion. This denial led to a return to federal district court and ultimately back to state court. The state court proceedings remained active until November 30, 1989, when the convicting court dismissed the prosecution.

The appellees assert that the district court's holding was correct. Since imprisonment no longer operated to toll the statute of limitations, the limitations period began to run against Rodriguez at the latest on September 1, 1987. Further, since Rodriguez was specially informed by the district court in February 1989, prior to the expiration of the limitations period, that he could file a new civil right suit, Rodriguez had full knowledge of his available remedies and should have acted upon them.

These contentions, however, overlook the fact that Rodriguez was a *pro se* litigant trying to get his case heard but being thwarted by substantive and procedural objections at every turn. Rodriguez' predicament is an aberration because the state court *sua sponte* reconsidered his case for the best of reasons—someone else confessed to the crime. We do have precedent for equitably addressing similar, though not analogous, scenarios. We have considered the quandary of a *pro se* litigant who timely files a civil rights complaint, but because his claim sounds in habeas, is directed to pursue and exhaust his state law remedies. Then when he finally returns to federal court he may find to his dismay that the statute of limitations has run. In *Mills v. Criminal District Court No. 3,* 837 F.2d 677, 680 (5th Cir.1988), we noted that because the litigant "may be entitled to amend his

section 1983 complaint after he has pursued his habeas claims through state courts," it would be preferable to remand for the district court to modify its judgment to provide for dismissal without prejudice. We added that "the district court should provide that the statute of limitations is suspended on the subject claims until the date the state courts finally rule thereon, provided [the plaintiff] seeks habeas relief on these claims in state court within ninety days." *Id.* (footnote omitted).

More recently, in *Jackson v. Johnson,* 950 F.2d 263 (5th Cir.1992) (per curiam), we reinforced the importance of dismissal without prejudice rather than holding the case in abeyance. We said that "holding in abeyance a federal complaint by a Texas litigant to avoid limitations problems while state remedies are exhausted harbors potential difficulties." *Id.* at 266. An impediment is the Texas development of the "rule of habeas abstention" which forbids the state to consider a habeas motion while a similar motion is "pending" in federal court.[7] Under this doctrine, "a federal district court might hold a case in abeyance to avoid the passage of the limitations period, and instruct the litigant to return to Texas state court to exhaust state remedies, only to have the litigant find that he cannot proceed in state court because of the federal case held in abeyance." *Id. See May v. Collins,* 948 F.2d 162, 169 (5th Cir.1991) (citing to the rule, finding it most prudent to dismiss without prejudice the writ of habeas corpus and allow unencumbered pursuit of action at the state trial court), *cert. denied,* ⎯⎯ U.S. ⎯⎯, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992), and *cert. denied,* ⎯⎯ U.S. ⎯⎯, 112 S.Ct. 1925, ⎯⎯ L.Ed.2d ⎯⎯ (1992).

Consequently, the *Jackson* Court reasoned that a resolution should lie elsewhere. It found another Texas rule most relevant. "[W]here a person is prevented from exercising his legal remedy

---

[7]*See May v. Collins,* 948 F.2d 162, 169 (5th Cir.1991), *cert. denied,* ⎯⎯ U.S. ⎯⎯, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992); and *cert. denied,* ⎯⎯ U.S. ⎯⎯, 112 S.Ct. 1925, ⎯⎯ L.Ed.2d ⎯⎯ (1992); *Carter v. Estelle,* 677 F.2d 427, 435–36 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *see also Rumbaugh v. McKaskle,* 730 F.2d 291, 293 (5th Cir.1984), *cert. denied,* 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985); *Bullard v. Estelle,* 708 F.2d 1020, 1021 n. 1 (5th Cir.1983); *Ex Parte McNeil,* 588 S.W.2d 592, 593 (Tex.Crim.App.1979) (en banc); *Ex Parte Green,* 548 S.W.2d 914, 916 (Tex.Crim.App.1977); *Ex Parte Powers,* 487 S.W.2d 101, 102 (Tex.Crim.App.1972).

by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 157 (Tex.1991); *Weisz v. Spindletop Oil and Gas Co.,* 664 S.W.2d 423, 425 (Tex.App.—Corpus Christi 1983, no writ); *Walker v. Hanes,* 570 S.W.2d 534, 540 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Cavitt v. Amsler,* 242 S.W. 246, 249 (Tex.Civ.App.—Austin 1922, writ dism'd). This Texas tolling rule enables a federal district court to dismiss the "civil rights/habeas action" without prejudice and to direct the litigant to pursue promptly state remedies. *Jackson,* 950 F.2d at 266. "The time during which the litigant is pursuing the available state remedies would toll the statute of limitations, thus allowing the litigant to return to federal court within the limitations period." *Id.*

Applying the *Jackson* case to the case before us, we find that Rodriguez' present civil rights action was timely filed. As we set out above, the state convicting court was intimately connected with Rodriguez' case, with only a brief respite in 1988, until November 30, 1989, when it dismissed the prosecution. Thus, we hold that the statute of limitations was tolled during the period between September 1987 and November 1989 because Rodriguez' state suit was actually pending. Limitations began to run on December 1, 1989, coincidentally the date in which Rodriguez returned to federal court by filing this second civil rights action. We find that the district court erred in ruling that this *pro se* litigant's civil rights action was time-barred. As the Ninth Circuit has recently said: "it would hardly promote the goals of the Civil Rights Act of 1871 to twice deny prisoners a federal forum for section 1983 complaints, once for being too early and again for being too late." *Young v. Kenny,* 907 F.2d 874, 878 (9th Cir.1989), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991).

Even if Texas did not provide a haven for equity, federal courts possess the power to use equitable principles to fashion their own tolling provisions in exceptional situations in which state statutes of limitations eradicate rights or frustrate policies created by federal law. *See, e.g. Meyer v.*

*Frank,* 550 F.2d 726, 729 (2d Cir.) (stating that "[i]t is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances"), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977);  *Kaiser v. Cahn,* 510 F.2d 282, 287 (2d Cir.1974) (finding that "in applying federal law to a claim based on a federal statute" a result may be prevented which would substantially impair a valid federal interest;  in this respect, the court is not "necessarily bound by the state's determination of when its statute of limitations is tolled where the question arises in a civil rights claim in the federal court").

We find that if ever circumstances warrant equitable tolling in a federal court in a case, it is this one.  A *pro se* litigant who maintained his innocence throughout his labyrinthian course for relief finally found vindication in the state courts.  But upon return to the federal courts to seek civil rights redress, he must not be told that his claim was time-barred by limitations.  Not only would a holding otherwise thwart this litigant, it would in effect deny the state court the right to keep a criminal case pending to enable it later to correct its own error.

## III. CONCLUSION

We find that Rodriguez as best he could as a *pro se* litigant diligently pursued his claims.  He filed this civil rights action immediately after his exhaustion of state law remedies.  By no means can this litigant be regarded as having "slept" on his rights.  *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).  Further, Rodriguez did not lull the defendants into believing that the section 1983 claim would never be raised;  he has persisted in its assertion since 1986.

Without a recognition of tolling in this case, Rodriguez would have again suffered a dismissal, yet not on the merits but on a technicality (the repeal of imprisonment as a disability for tolling purposes) while his litigation was pending.  We find that Rodriguez' suit is timely filed under the Texas tolling rule as well as the power in the federal courts to toll limitations when a potentially valid

federal interest is to be protected.  We reverse and remand for further proceedings.


REVERSED AND REMANDED.