# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

m 99-20282
Summary Calendar

_____

DARRELL JOE,

Plaintiff-Appellant,

VERSUS

CITY OF HOUSTON FIRE DEPARTMENT/CIVIL SERVICE COMMISSION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-134)

_____

March 1, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Darrell Joe, once a firefighter for the City of Houston, was suspended indefinitely for having been arrested for the purchase and use of crack cocaine, an arrest he contends to have been false. He filed a complaint with the Texas Commission on Human Rights ("TCHR") and the Equal Employment Opportunity Commission ("EEOC"), charging race discrimination because other employees who had committed crimes had not been suspended indefinitely. He sued under title VII, but the district court found the action time barred and dismissed. Finding no error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

After learning that Joe had been arrested on September 1, 1995, the fire chief held a predisciplinary meeting with him on December 6, 1995, and sometime thereafter informed him that he would be indefinitely suspended, which is tantamount to dismissal. The chief provided Joe official notification of this indefinite suspension on January 3, 1996, and explained that Joe needed to appeal to the Civil Service Commission (the "Commission") within fifteen days. Joe did so, and on June 5, 1996, the Commission upheld the suspension.

The EEOC filing period functions as a statute of limitations, barring suits not preceded by a timely complaint. _Zipes v. Trans World Airlines, Inc._, 455 U.S. 385, 393-94 (1982). Joe filed complaints with the TCHR and EEOC on March 11, 1997. The city argued, and the district court agreed, that this was more than 300 days after the alleged discriminatory conduct had ended, and was therefore untimely. Joe, on the other hand,

asserted that the discriminatory conduct continued until the Commission denied his appeal, so his complaint was timely.

## II.

The time for filing a complaint with the EEOC "will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination." *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir. 1995); *see also Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980). This limitation "reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Id.* at 260.

That Joe received review by the Commission does not alter the date for beginning the filing-deadline period. In *Ricks*, the plaintiff was a professor who had been denied tenure, had been offered a one-year "terminal contract," which he accepted, had appealed his denial of tenure, and had been denied. *Id.* at 252-55. Upon filing a civil rights action, he found himself barred by his tardy application to the EEOC and argued that his filing period should not have begun to run until his actual date of termination, or at the earliest on rejection of his appeal. *Id.* The Court disagreed.

> Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure. . . . In sum, the only alleged discrimination occurredSSand the filing limitations periods therefore commencedSSat the time the tenure decision was made and communicated to Ricks.

*Id.* at 258.

Joe presents a similar situation. The city discriminated against him, if at all, when the chief suspended him indefinitely. For us to hold that the filing period did not commence until the Commission made its decision, we would have to find that Joe had pleaded and provided evidentiary support for the proposition[1] that the Commission had reviewed his suspension in a manner different from that it employed when reviewing the indefinite suspensions of other employees and that it had done so on account of race. Even applying the liberal standards of interpretation generally granted to *pro se* pleadings,[2] we see no such claim in Joe's complaint, nor any evidence to support it.

The statutory period in which Joe was required to file a complaint with the EEOC, therefore, began at the latest on January 3, 1996, so his March 11, 1997, complaint to the EEOC was untimely. The law, without more, demands dismissal.

## III.

In certain situations, however, the doctrines of equitable estoppel and equitable tolling may apply. "Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Clark v. Resistoflex Co.*, 854 F.2d 762, 769 n. 4 (5th Cir. 1988) (*quoting Felty v. Graves-Humphreys,* 785 F.2d 516, 519 (4th Cir. 1986)). These doctrines primarily are the province of the district court and are applied at its discretion; we therefore review for abuse of discretion that court's determination that these

---

[1] While the city initially filed a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court converted that motion, *sua sponte*, into a motion for summary judgment under FED. R. CIV. P. 56(c) 10 days after both parties had submitted matters outside the pleadings.

[2] *See, e.g., Rodriguez v. Holmes*, 963 F.2d 799, 801 (5th Cir. 1992) (noting that "the allegations of a *pro se* complaint . . . must be read in a liberal fashion, and however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotations omitted)).

facts do not warrant application of either doctrine. *See Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

Considering equitable estoppel first, we can find nothing in the pleadings or the record to suggest that Joe was "induced to refrain from exercising his rights" by any party. We have "described the level of employer culpability required to trigger equitable estoppel in terms of a recklessness standard: The doctrine may properly be invoked when the employee's untimeliness in filing his charge results from either the employer's deliberate design to delay the filing or actions that the employer should unmistakably have understood would result in the employee's delay." *Id.* at 769 (internal quotations and citations omitted).

The record does not indicate that anything of the kind occurred here. Joe was informed by the chief of the reasons for his discharge, that the letter of January 3, 1996, officially enacted his suspension, and that the available appeal process worked as the appeal of a final decision rather than as the decision itself. Joe does not allege that any representative of the city suggested that he should refrain from complaining to the EEOC or that his rights would remain intact during the pendency of his appeal; neither does he claim that the city kept relevant information from him.

In *Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988), we heard the complaint of an employee who had failed to file a timely complaint and who argued that her employer was "estopped from invoking her failure to file . . . because it concealed the reason for her termination." We held that because the plaintiff had been "advised at the time of her termination that she was being discharged for cause, and she was able to evaluate the propriety of the reasons for her dismissal immediately," her employer was not estopped from pleading the passage of the filing period merely "by not expressly declaring that her discharge was due to [discrimination]." *Id.* Such a holding, we thought, would be "tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute." *Id.* Similarly, the record here suggests nothing the city did to cause it to forfeit the benefits of the limitation period.

What remains to Joe, then, is equitable tolling, which looks to him rather than to the city to see whether his tardiness can be excused. "The plaintiff has the burden of demonstrating a factual basis to toll the period," *Blumberg*, 848 F.2d at 644, and we attempt by liberal construction of Joe's pleadings to find the sort of "rare and exceptional circumstances" that will allow for equitable tolling. *Fisher,* 174 F.3d at 713. Too, "a garden variety claim of excusable neglect does not support equitable tolling." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

The record presents no facts that have not previously been considered and dismissed by this court as insufficient excuses for failure to meet a statute of limitations. Joe proceeds *pro se* and *in forma pauperis*, but an "argument[] that he is a 'layman-at-law,' a pauper without legal assistance . . . afford[s] him no defense to the absolute bar of the statute of limitations." *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977). *See also Fisher,* 174 F.3d at 714 (opining that "ignorance of the law, even for a[] . . . *pro se* petitioner, generally does not excuse prompt filing"). This result springs from necessity rather than dearth of generosity; though forgiven his failures of art, the pauper no less than the practitioner must vigorously and swiftly pursue his claims of right lest quietude and repose, so necessary to the rule of law and ordered society, succumb to his delayed attack.

Neither does Joe benefit from a claim that third parties hindered his pursuit of justice. He included with his pleadings a copy of the complaint that he eventually filed with the EEOC, which complaint noted that "discrimination took place" from January 3, 1996, until June 5, 1996. He might have understood this notation to work an endorsement of his contention that the 300-day limitation period began on June 5. We note, however, that he did not file the relevant complaint until March 11, 1997, after the

correctly calculated limitation period had ended; thus, any representation by the EEOC that discrimination had occurred until June 5, 1996, did not come in time for Joe meaningfully to have relied on it.

Meanwhile, we could not hear complaintSSeven if Joe had made itSSthat the EEOC had made more evanescent representations to him about the running of the filing period. As we have explained in the context of age-discrimination filings with the EEOC,

> [i]t would be virtually impossible for the EEOC or a defendant to rebut a plaintiff's unsupported allegation that the EEOC provided incomplete information in a telephone conversation. Allowing a plaintiff equitably to toll a time limitation based on incomplete information provided in a telephone conversation would create a great potential for abuse. Thus, we hold that . . . alleged incomplete oral statements made by the EEOC to [a complainant] during a telephone conversation will not support equitable tolling.

*Conaway v. Control Data Corp.*, 955 F.2d 358, 363 (5th Cir. 1992).

The central bar to any attempt to invoke the doctrine of equitable tolling, though, must be Joe's lack of diligence. "In order for equitable tolling to apply, the applicant must diligently pursue his . . . relief. . . . As this court has noted, equity is not intended for those who sleep on their rights." *Coleman*, 184 F.3d at 403.

We have refused to apply the doctrine in cases in which the plaintiff might have stated a reasonable claim to toll a small portion of the limitations period, even when that small period would prove "outcome determinative," if he has not generally prosecuted his case diligently. *Fisher*, 174 F.3d at 715; *see also Coleman*, 184 F.3d at 403. Joe did not prosecute his case for more than a year after he was indefinitely suspended or for nearly 300 days after his appeal was denied.

AFFIRMED.

4